THOMAS F. MCANDREW vs. SCHOOL COMMITTEE
OF CAMBRIDGE & another.[1]

Norfolk.    March 8, 1985. — July 11, 1985.

Present: DREBEN, KAPLAN, & KASS, JJ.

*School and School Committee*, Appointment of personnel. *Estoppel. Contract*, What constitutes, Promissory estoppel, Damages. *Damages*, Breach of contract.

A school teacher who had accepted an offer of employment as a music teacher upon the assurances of the director and assistant director of music of the Cambridge public schools that his name would be submitted to the school committee for approval, but who was never appointed by the school committee as required by G. L. c. 71, § 38, could not recover for breach of an employment contract when, some three and one-half weeks after he had begun teaching, the directors fired him. [358-359]

A school teacher who had given up a teaching position in Georgia and moved to Massachusetts after receiving an offer of employment from the director and assistant director of music of the Cambridge public schools with assurances that his name would be submitted to the school committee for approval, who was never appointed by the school committee as required by G. L. c. 71, § 38, and who was fired by the directors some three and one-half weeks after he had begun teaching was not entitled to recover damages for breach of an employment contract on estoppel principles in light of the public interest in compliance with the statutory requirements of c. 71, § 38. [359-361]

A school teacher who had given up a teaching position in Georgia and moved to Massachusetts after receiving an offer of employment from the director and assistant director of music of the Cambridge public schools with assurances that his name would be submitted to the school committee for approval, who was never appointed by the school committee as required by G. L. c. 71, § 38, and who was fired by the directors some three and one-half weeks after he had begun teaching would be entitled to recover for the directors' breach of their promise to submit his name for approval if he could show that the directors had failed to do so without some valid reason; however, his damages for such a breach

[1] Superintendent of schools of Cambridge.

would be limited to the damages he incurred before and during the three and one-half weeks prior to his discharge and could not include damages for loss of compensation for the entire year, whether measured by the salary he would have received in Georgia or that which he expected to receive in Cambridge. [362-365]

CIVIL ACTION commenced in the Superior Court Department on May 11, 1981.

The case was tried before *Thomas F. Fallon*, J., sitting under statutory authority.

*David B. O'Connor*, Assistant City Solicitor, for the defendants.

*John E. DeVito* for the plaintiff.

DREBEN, J. This action was brought for breach of an alleged contract employing the plaintiff as band leader and teacher in the Cambridge public school system. The school committee and the superintendent of schools, defendants, claiming they were entitled to directed verdicts by reason of G. L. c. 71, § 38, appeal from judgment against them entered on jury verdicts for the plaintiff.

We relate the facts as they could have been found by the jury. In late August, 1980, the school committee advertised for a permanent band leader and orchestra teacher for Cambridge High and Latin School for the 1980-1981 school year.[2] The position had to be filled quickly, as the former band leader had resigned suddenly, the beginning of the school year was at hand, and the band was committed to a number of musical events in the early fall, including a parade in celebration of Cambridge's 350th anniversary.

While in Boston visiting relatives, the plaintiff, a resident of Georgia and a high school teacher, saw and responded to a newspaper advertisement for the position. After several interviews with the director and assistant director of music of the

---

[2] The post was advertised by the personnel department of the Cambridge public schools at the request of the director of music. This was the procedure followed when a position became "officially vacant."

Cambridge public schools (the directors), and after all his references had been checked, the plaintiff was offered a one-year "permanent" position by the directors.

Although he was told that his appointment had to be approved by the Cambridge school committee, he was assured that approval would be no more than a "rubber stamp" which would be granted upon the recommendation of the directors and that "this is common procedure in education." The directors read the list of school committee members to the plaintiff and mentioned those who were "on their side." The plaintiff was also given the name of one member of the committee (whom he called) who had a real estate business, as the directors wanted to ensure that the plaintiff would live in Cambridge.

After urging by the directors, the plaintiff accepted the position. He gave up his teaching post in Georgia, moved to Cambridge (at a cost of approximately $3,000), and began teaching on September 15, 1980. Three and one-half weeks later, after the 350th anniversary parade, the directors fired him. They never submitted his name to the superintendent of schools or to the school committee.[3]

The jury were instructed that they could find a breach of an employment contract and were also instructed on the principles of estoppel, in each instance over the defendants' objection. They returned verdicts for the plaintiff and assessed damages in the sum of $23,000.

1. *No recovery for year's employment.* (a) *Statutory bar.* The defendants claim they were entitled to directed verdicts by reason of G. L. c. 71, § 38, set forth in the margin,[4] which

---

[3] The reasons, other than a bare assertion that the plaintiff's performance was unsatisfactory, were not elucidated.

[4] General Laws c. 71, § 38, as amended through St. 1978, c. 100, in relevant part provides: "[The school committee] shall elect and contract with the teachers of the public schools, shall require full and satisfactory evidence of their moral character, and shall ascertain their qualifications for teaching and their capacity for the government of schools. It may also hire instructional or administrative aides for assignments in laboratories and

provides the exclusive method of contracting with teachers, namely, that they be nominated by the superintendent and voted by the school committee.

The plaintiff did not secure an employment contract as a teacher with the city. "Authority to employ him was vested solely in the school committee." *Demers* v. *School Comm. of Worcester*, 329 Mass. 370, 373 (1952). See *Pulvino* v. *Yarmouth*, 286 Mass. 21, 24 (1934); *Bonar* v. *Boston*, 369 Mass. 579, 581-582 (1976). The statutory requirements were concededly not met, and the jury were incorrectly charged that they could find a breach of an employment contract on common law principles.

The plaintiff argues that, at the very least, he was an "extended term substitute" and urges that his hiring as such a substitute did not require compliance with § 38. He cites no authority for this claim, and we do not see how he can escape the statutory requisites of the hiring process on this basis.[5] See *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 737 (1978), where we held that service as a long term substitute teacher counted toward the establishment of tenure, noting that such a teacher "performs the same functions . . . , is evaluated and hired in the same manner as a regular teacher, and serves for a predetermined period of time . . . ."

(b) *Estoppel inapplicable.* The jury were also instructed on principles of estoppel as follows: In order to find estoppel, "you must find that the defendant made a representation to the plaintiff that he had a permanent teaching position, that the plaintiff actually relied on that representation by the defendant and did something as a result of that representation, and the conduct or the action taken resulted in him being harmed."

---

classrooms. . . .

"The vote on the election, contract, or promotion of a teacher shall be by yeas and nays. No election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract or promotion by the superintendent of schools. . . ."

[5] Even if evidence of practice were relevant on this issue, we note that the testimony that the statutory requirements of G. L. c. 71, § 38, were not applied to substitute teachers related to "day to day" substitutes and not to "extended term substitutes."

Traditionally, courts have not permitted estoppel of the government. A starting point, suggested by Professor Davis, is that "the King cannot be estopped, for it cannot be presumed the King would do wrong to any person." 4 Davis, Administrative Law § 20.2 (2d ed. 1983), citing Bacon's Abridgments, quoted in 15 Halsbury's Laws of England 248.[6] For a comprehensive discussion of Federal cases, a criticism of the doctrine,[7] and the discerning of "a mainstream of case law estopping the government," see 4 Davis, *supra* §§ 20.1-20.6 and § 20.12, at 43. See also Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551 (1979). Justifications of the tradition, other than that of sovereign immunity, are the need for protecting the public against improper collusions," *Lee* v. *Munroe*, 11 U.S. (7 Cranch) 366, 370 (1813), deference to legislative policy, concern about the public treasury, and administrative efficiency.

Although the withering of the doctrine of sovereign immunity has had some effect on the law of estoppel in Massachusetts,[8] the courts are "reluctant to apply principles of estoppel to

---

[6] "The separate reasons why the rule of immunity was established for the municipality, on the one hand, and for the sovereign, on the other hand, may have been sound in their inception but they have long since lost their validity." *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 616 (1973).

[7] Davis predicts at 7: "In the long run, the view that will prevail may be something like this: 'Something is wrong when the citizen can recover for a dented fender caused by a postal employee at the wheel of a government truck and one cannot when he is booby-trapped by an employee of Federal Crop Insurance. . . .' *McFarlin* v. *Federal Crop Ins. Corp.*, 438 F.2d 1237 (9th Cir. 1971)."

[8] See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 54-55 & n.3 (1982), where the Supreme Judicial Court refused to follow Federal precedents in interpreting § 4 of G. L. c. 258, the Massachusetts Tort Claims Act. Based on "modern views on the doctrine of sovereign immunity," including rejection of the assumption that there can be no suit against the sovereign without the permission of the Legislature, the court estopped the defendant commission, by reason of its prior conduct, from raising a particular defense. *Id.* at 54-55, 57. But see *Holahan* v. *Medford*, 394 Mass. 186, 190 (1985), which construes *Vasys* as an application of the principle that a *litigant* may not assume inconsistent and contradictory positions.

public entities where to do so would negate requirements of law intended to protect the public interest." *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 693 (1982). Thus, the rule against applying estoppel to the sovereign continues almost intact where a government official acts, or makes representations, contrary to a statute or regulation designed to prevent favoritism, secure honest bidding, or ensure some other legislative purpose. Preservation of "the processes ordered by the Legislature," *id.* at 694, "overrides the equities that would appropriately be considered in a purely private transaction," *id.* at 693.

Application of estoppel principles to bind the defendants to a contract of employment with the plaintiff would, in this case, run counter to express judicial as well as legislative policy. Authority for the management of the public schools is vested in the school committee of a city or town. See G. L. c. 71, §§ 37 & 38; *Sheldon* v. *School Comm. of Hopedale*, 276 Mass. 230, 235-236 (1931). As was stated in *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940), "By long established legislative policy school committees are given general management of the public schools including the election and the dismissal of teachers. . . . The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system." A school committee may not delegate this authority, and the concept of nondelegability of the authority of "an incumbent school committee in the appointment . . . of academic personnel [also] has a long tradition." *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 111 (1977), and cases cited.

These judicial and legislative statements, designed to establish and maintain public schools of high quality, lead us to conclude that the public interest in complying with the statutory requirements of § 38 precludes the award of damages for a breach of an employment contract on estoppel principles. It was error to instruct the jury that they might make such an award.

2. *Recovery on a narrow basis.* Although the plaintiff is not entitled to damages for a breach of contract of employment, it does not follow that he is without any remedy. While G. L. c. 71, § 38, denies the directors ultimate hiring authority, the statute does not preclude the interviewing and negotiating with prospective applicants by subordinates of the school committee. Implicit in the jury verdict is a finding that, at the very least, the directors gave the plaintiff a subsidiary promise that, barring some valid reason, they would submit his name to the superintendent and the school committee. The record does not suggest that this subsidiary promise to recommend the plaintiff was beyond their authority or that it offends any statute or legislative policy. Cf. *School Comm. of Salem* v. *Gavin*, 333 Mass. 632, 634-635 (1956). To the contrary, in the pressing circumstances of the last days of August, 1980, the directors as agents of the defendants were well within their duties in doing what they could to obtain, subject to the necessary approvals, the most qualified candidate.

The promise, however, is a very limited one and the meaning to be given to "some valid reason" must be broad. Thus, the directors may not, consistently with the policies of G. L. c. 71, §§ 37 & 38, bind themselves to submit the plaintiff's name to the school superintendent if they in good faith have a valid reason for refraining from doing so. The school committee in "choosing and keeping . . . proper and competent teachers," *Davis* v. *School Comm. of Somerville*, 307 Mass. at 362, must have the best advice of its subordinates, even if the latter may have previously given rash assurances.

The broad and oft-cited meaning of "good cause" set forth in *Rinaldo* v. *School Comm. of Revere*, 294 Mass. 167, 169 (1936) is, we think, an appropriate standard for defining "valid reason" in this context. "Good cause includes any ground which is put forward . . . in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the . . . task of building up and maintaining an efficient school system."

That the present plaintiff was treated shabbily (so far as appears on this record) cannot be gainsaid. No rule requires that agents of the defendants, acting within the scope of their

authority, be totally exempt from the principles of fair dealing or be permitted to act arbitrarily. On the record before us, the promise does not require any relaxation of the requirements of law intended to protect the public interest[9] and appears authorized. Indeed, the promise may be viewed as vital and proper to obtain needed services for the defendants. We see no reason not to enforce it.

Liability has been imposed in similar circumstances. In *Kaye* v. *United States*, 467 F.2d 416-419 (D.C. Cir. 1972), a Yale law student who had moved to Washington in June for a summer job with a government agency which required security clearance did not obtain such clearance until August. He had been told that the usual starting date for summer students was June, and he had turned down other jobs. The court reversed an order allowing summary judgment for the government and held that the plaintiff would be entitled to recover if he could prove the existence of a subsidiary promise by the government to exercise its best efforts in good faith to complete the security clearance as promptly as reasonably possible. *Id*. at 418-419.

An additional ground[10] for enforcing the subsidiary promise is set forth in § 90(1) Restatement (Second) of Contracts (1981). That section provides: "(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." There is no question that the directors' subsidiary promise falls within the section and that reliance can form the basis of an enforceable promise in Massachusetts. *Loranger Constr. Corp* v. *E. F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978).

---

[9] The obligations imposed on the directors because of their promise do not, of course, impose any obligation on the part of the superintendent to recommend or on the school committee to elect.

[10] The agreement to come to Cambridge was, at least, an acceptance by the plaintiff of the subsidiary promise. The subsidiary promise and its acceptance establish a contract, apart from the § 90 principle now discussed.

A number of courts have enforced promises against the government on the § 90 principle.[11] Thus, in *Kaye* v. *United States*, 467 F.2d at 419, discussed earlier, the court also proceeded on the § 90 principle, stating: "Additionally, Kaye was entitled to the opportunity to establish that the Government induced Kaye's reliance by its implied promise . . . ." A case strikingly similar to the one at bar, *Minor* v. *Sully Buttes Sch. Dist. #58-2,* 345 N.W.2d 48 (S.D. 1984), allowed, on the § 90 principle, recovery of moving expenses to a band leader who had been induced to leave a job in Minnesota to come to South Dakota, although recovery was denied for breach of a contract

---

[11] Although the term "promissory estoppel" has been used to describe § 90 promises, the term may be misleading in this governmental context. "Estoppel" or reliance is used in this part 2 in a somewhat different sense from that in section 1 (b) of this opinion. There, we held that reliance may not be the basis to prevent or estop the government from asserting a statutory or other impediment to a plaintiff's claim that he had an employment contract with the city. If there were no such impediment (or any question or sovereign immunity), that is, if the directors had full authority by statute or otherwise to make such a contract, the reluctance to apply principles of estoppel to the government would not be involved. Only conventional contract principles would be at stake. This is so because promises enforceable by virtue of reliance, that is, § 90 promises, have been restored to their "traditional" status and hence are now treated as ordinary contracts, except as to recovery. See *Loranger Constr. Corp.* v. *E. F. Hauserman Co.*, 376 Mass. at 761, citing *Sullivan* v. *O'Connor*, 363 Mass. 579, 588 n.6 (1973), and § 90. See generally as to amounts of recovery Farnsworth, Contracts § 2.19, at 93-98 (1982). Since we view the directors as acting within their authority to make the subsidiary contract without any statutory impediment (made known to us), we view the contract as binding on § 90 principles.

Another basis for recovery is stated in *Smale & Robinson, Inc.* v. *United States*, 123 F. Supp. 457, 465 (S.D. Cal. 1954), that is, "acts or omissions of agents lawfully authorized to bind the United States or direct its course of conduct during a particular transaction may estop the Government." See also *Semaan* v. *Mumford*, 335 F.2d 704, 706 & n.6 (D.C. Cir. 1964), where the court held that the Librarian of Congress would be estopped, if the facts were as alleged, to deny the plaintiff the procedural rights of a permanent employee on dismissal. "Since the Government agency to be estopped here possessed the authority to do what it appeared to be doing, was not depriving the public of the protection of any statute, and was acting in a proprietary capacity *qua* employer, there is no reason to bar an estoppel here." *Id.* at 706 n.6. While we note that these cases lend some support to our conclusion, we prefer in this case to rest on the enforceability of the subsidiary promise.

McAndrew *v.* School Committee of Cambridge.

of employment because statutory requisites had not been met. See also *Warner* v. *North Orange County Community College Dist.*, 99 Cal. App. 3d 617, 627 (1979). Compare *Ogbunugafor* v. *St. Christopher's Union Free Sch. Dist.*, 100 A.D.2d 580, 580-581 (N.Y. 1984).

While the plaintiff may be able to establish on retrial that he is entitled to some damages, we think the measure of damages for the breach should be limited to the damages the plaintiff incurred before and during the three and a half weeks prior to his discharge. Damages for the loss of the entire year, whether measured by his Georgia salary or his expected Cambridge compensation, may not be recovered, as it would be improper to accomplish, in the guise of compensation for breach of the subsidiary promise, what could not be done directly because of the policy reasons expressed in part 1 of this opinion. Cf. *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 802 (1980). Damages measured by his Cambridge salary would also be too speculative. See note 9, *supra*.

The judgment is reversed and the matter is remanded for further proceedings limited to the issue whether the directors had "good cause" to refrain from submitting the plaintiff's name; if the answer be no, there will be the further issue of damages.[12]

*So ordered.*

---

[12] The parties have not raised and we do not consider whether the city is a necessary party to the action. An amendment may be in order on remand. See *Zegouros* v. *City Council of Fitchburg*, 381 Mass. 424, 429 (1980).