CARAWAY, J.
_JjIn this case, the plaintiff was recruited by the university president and athletic director to become a head basketball coach at the state university. The plaintiff left a higher paying coaching job in another state on the assurance that he would receive a four-year term employment contract. The president of the university made that promise subject to the approval of the management board for the institution as required by Louisiana law. Upon plaintiffs commencement of the job in Louisiana and for over a year thereafter, the management board did not act to consider the four-year contract and plaintiff was then fired. He now brings this action asserting in this appeal the claim of detrimental reliance under Civil Code Article 1967. The trial court dismissed the claim on the university’s motion for summary judgment. Finding material issues of disputed fact, we reverse the summary judgment.

Facts

This appeal stems from an employment dispute between Rick Duckett and Gram-bling State University (“GSU”), through its Board of Supervisors for the University of Louisiana System (the “Board”). In 2008, GSU’s president, Dr. Horace A. Judson, and its athletic director, Troy Math-ieu, recruited Duckett to be the head coach of their men’s basketball team. At the time of his recruitment by GSU, Duckett had been the assistant men’s basketball coach at the University of South Carolina for seven years. In addition to his annual salary of $119,148 in South Carolina, his wife also made $53,200 per year as a senior claims representative at State Farm.
|2On May 12, 2008, Judson offered Duck-ett the position of head coach for the men’s basketball team. Specifically, his letter stated as follows:
I am pleased to offer you the unclassified position of Men’s Head Basketball Coach at Grambling State University, pending approval of the Board of Supervisors of the University of Louisiana System. This is a regular, full-time, 12-month position at a beginning salary rate of $103,000, effective June 9, 2008. This offer is for a four-year contract period effective as of that date. This employment offer also includes a one-time moving allowance of up to $8,000.... Should you accept this offer, you will report to the Athletic Director, Mr. Troy Mathieu, who will provide you with your specific job responsibilities and other operating policies and procedures. Your reply will be needed immediately.
While Duckett was initially hesitant about quitting a secure job prior to finaliz *480 ing a contract, Duckett asserts that Judson and Mathieu assured him that the Board had already agreed to approve his contract. In his affidavit, Duckett stated that he “spoke to Judson and Troy Mathieu and was advised that they ‘had already run my offer up the flagpole’ and that they had been assured by the Board of Supervisors that it would accept [his] contract upon presentment.” Since they assured him that “the approval by the Board was a mere formality and that upon our reaching an agreement on a contract, the contract would be promptly presented to the Board for its consideration and approval,” Duck-ett accepted the job offer on May 14, 2008. Thereafter, Duckett quit his job, moved his family to Louisiana, and began his position as GSU’s head basketball coach.
By August, the parties[1] had apparently agreed on the final provisions of the employment contract, and on August 20, 2008, GSU’s legal representative provided Duck-ett, through his attorney Stu Brown, with a | ciformal contract ready for signature. This contract provided for a four-year term of employment that would commence on June 2, 2008, and end on June 30, 2012. Duckett’s salary for the first year was set at $103,000, but his salary would increase annually by $3,000 to $112,000 for the final year. The contract provided for liquidated damages if GSU prematurely terminated Duckett’s employment without cause. If terminated without cause, the contract stated that Duckett would receive his remaining base salary for that current year, his salary from his last contract year ($112,000), and any incentives earned.
Duckett quickly signed this contract and sent it to Judson to sign and submit to the Board on October 24, 2008, the next available Board meeting. While the October Board minutes listed the approval of Duck-ett’s employment contract as an agenda item, the minutes reflect that “at the request of Dr. Horace Judson, President, this item was deferred.”
Although the approval of the contract was deferred by the Board, no one informed Duckett that his contract had not been approved until November 24, 2008, when GSU sent him a summary of eight recommended changes to his employment contract. It is not clear from the record whether these proposed changes came from Judson or the Board. However, Dr. Randy Moffett, the President of the Board, suggests in his affidavit that these contract amendments were proposed by the Board. Again Judson assured Duckett that everything was fíne. Since he was in the middle of the basketball season, Duckett did not have free time to deal with the contract and once again, relied on Judson’s assurances. Nevertheless, the amended 1 ¿contract was virtually the same as the original contract regarding the term of employment and made alterations only in the liquidated damages provisions.
As a result of the November 24, 2008 revised contract, Duckett’s attorney sent a letter, on January 8, 2009, agreeing to six of the eight proposed amendments to the contract. Additionálly, he voiced Duck-ett’s surprise that the August contract had not been considered the final agreed-upon contract, especially considering it was written by GSU and signed by Duckett.
As Duckett’s employment continued into its second year in June 2009, his salary was apparently raised in accordance with his initial agreement with Judson and the proposed contract. On August 11, 2009, a GSU attorney provided Duckett’s attorney with a revised employment contract that incorporated only the six amendments that *481 Duckett accepted. The cover sheet stated that “we would like to submit the final contract for Board approval at our upcoming Board Meeting. If possible, please return the signed contract by the close of business today.” Since there was a Board meeting on August 24, 2009, Duckett signed the contract on the day that he received it and sent it to Judson, who also signed it. Despite these facts, Duckett’s employment contract was never presented to the Board for approval nor was Duckett informed that the Board never considered it.
Duckett received a termination letter, by hand delivery, from Judson on September 24, 2009. In particular, this letter stated that:
This is to inform you that your unclassified at-will employment at Grambling State University will officially end at the close of | ¡¡business on October 31, 2009. Effective at the close of business on Thursday, September 24, 2009, you will be placed on paid administrative leave until your employment officially ends.
There is no evidence presented indicating that Judson’s termination of Duckett’s employment resulted from the vote and authorization of the Board.
Upon receipt of Judson’s letter, Duckett made demand for his remaining salary for his current contract year, 2009-2010, and his final year’s salary of $112,000 as specified under the proposed written contracts. GSU, however, refused his demands. Since his employment ended, Duckett has been unable to find a full-time job, forcing him to receive unemployment benefits, sell his house at a loss, and exhaust his retirement savings in order to support his family-
Duckett filed a petition against GSU through the Board[2] on May 19, 2010. Duckett’s petition set forth a breach of contract claim. Alternatively, the plaintiff asserts a cause of action based on the theory of detrimental reliance. Since the Board never approved Duckett’s contract, the defendant filed a motion for summary judgment on February 25, 2011. The defendant presented the affidavit of Moffett as evidence of the lack of a contract. Mof-fett’s affidavit stated that:
He further deposes that he was aware that his staff had reviewed on several occasions the proposed contract for Rick Duckett, head men’s basketball coach at Grambling State | ^University.... In or about April 2009, the terms of the contract could not be agreed upon and he did not recommend Rick Duckett’s contract for approval through the Board of Supervisors for the University of Louisiana System nor was it ever placed on the University of Louisiana System Board agenda for approval. Mr. Duck-ett’s contract was never voted upon nor approved by the Board of Supervisors for the University of Louisiana System.
At the hearing on the motion for summary judgment, the trial court reviewed and followed the holding in J.D. Barnett v. Board of Trustees for State Colleges and Universities, 00-1041 (La.App. 1st Cir.6/22/01), 809 So.2d 184. The trial court stated that Duckett, like Barnett, failed to provide any factual support for an element of his breach of contract claim, i.e., that *482 there was an authorized contract. As for the plaintiffs detrimental reliance theory, the trial court considered it noteworthy that Duckett, like Barnett, had been informed from the beginning that Board approval was a necessary prerequisite to his employment contract. Although the trial court felt that Duckett was reasonable in relying upon the representations, the trial court did not believe that Judson and Mathieu’s promises could be imputed to the Board. The trial court concluded that persons negotiating with agencies of the state do so charged with knowledge of the laws and knowledge that the validity of their acts is subject to those laws, citing Brodhead v. Board of Trustees for State Colleges and Universities, 588 So.2d 748, 752 (La.App. 1st Cir.1991), writ denied, 590 So.2d 597 (La.1992), and State through Dep’t of Highways v. City of Pineville, 403 So.2d 49 (La.1981). As a result, the trial court granted the defendant’s summary judgment motion and dismissed the plaintiffs case.
| tDiscussion
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773.
The motion for summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049; Knowles v. McCright’s Pharmacy, Inc., 34,559 (La.App.2d Cir.4/4/01), 785 So.2d 101.
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730; Knowles, supra. Issues that require the determination of reasonableness of acts and the conduct of parties under all facts and circumstances of the case cannot ordinarily be disposed of by summary judgment. Rhymes v. Winn-Dixie Louisiana, Inc., 10-1357 (La.App. 3d Cir.3/9/11), 58 So.3d 1068; Granda v. State Farm Mut. Ins. Co., 04-1722 (La.App. 1st Cir.2/10/06), 935 So.2d 703, writ denied, 06-0589 (La.5/5/06), 927 So.2d 326.
In Duckett’s appellate argument he concedes that a valid contract between himself and GSU, through the Board, was never confected. Nevertheless, asserting his alternative plea of detrimental reliance, he claims that issues of material fact bearing on that cause of action require reversal of the trial court’s grant of summary judgment. Despite Duckett’s concession of no contract, we will first review the reason for the admitted deficiency in the proposed contract and examine the scope of recovery of contractual damages which a valid four-year term employment contract would have afforded him. Review of the contract claim reveals a contrast to Duckett’s detrimental reliance claim and the material facts and available recovery for such claim.
*483 In this case, the parties intended to enter into an employment contract with a four-year term. This fact is clearly shown through the employment offer itself and the numerous contract drafts. Yet from the beginning, the finalization of their employment contract was always conditioned upon receiving the Board’s approval. Thus, any assertion by Duckett of an apparent authority by Judson and Mathieu to bind the public institution to a term contract cannot be made. The requirement for Board approval is set forth in La. R.S. 17:3305(A), as follows:
The head of each college and university shall appoint and fix the salaries and the duties of the members of the faculty and administrative and professional staff for the college or university he heads, subject to the recommendation of the president or chief administrative officer of the system and approval of the appropriate management board.
|9In this case, it is not disputed that the Board, as the “appropriate management board” of GSU, never voted on nor approved Duckett’s employment contract.
The Civil Code provides the remedy for employees hired for a term of years upon the breach of a term employment contract. Louisiana Civil Code Article 2749 provides:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
Therefore, with the defect in the contract formation, Duckett is not entitled to recover the salary that he would have been paid for the following 2-1/2 years or the discussed liquidated damages as if he had a valid employment contract for a term.
Additionally, before consideration of Duckett’s claim of detrimental reliance, it should be observed that GSU and Duckett were in a tacit contractual employment relationship for all the time Duckett devoted to the university and for which GSU made payment of his salary. This was an at-will employment relationship under which GSU was obligated to pay the salary for the time period of Duckett’s actual services as an employee. Because of the public policy reflected in La. R.S. 17:3305(A), the additional term obligation and the greater potential liability resulting from Civil Code Article 2749 could not arise in the absence of Board approval.
In the 1984 revision of the Civil Code provisions for conventional obligations, new Article 1967 for the first time incorporated into our law | ^“detrimental reliance as an additional grounds for enforceability.” La. C.C. art. 1967 and its Revision Comment (a). Article 1967 provides:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
In comparison to this new addition to our law, the common law, Restatement (Second) of Contracts § 90(1) (1981), provides for detrimental reliance, as follows:
A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
*484 Apart from the last sentence of Article 1967 dealing with an informal gratuitous promise, the detrimental reliance principle in Louisiana is similar to that expressed in the common law restatement.
Since the passage of Article 1967, the Louisiana Supreme Court has not yet had occasion to employ the new detrimental reliance law in any case after trial with reliance damages awarded to an aggrieved party. The court did however discuss the claim in Suire v. Lafayette City-Parish Consol. Gov’t, 04-1459, 04-1460, 04-1466 (La.4/12/05), 907 So.2d 37, where it partially reversed a summary judgment which had dismissed the plaintiffs claim for detrimental reliance against the City of Lafayette. The court stated:
The City argues, initially, that Suire’s detrimental reliance claim must fail, as a matter of law, because there was no contract |nbetween Suire and the City. But, as noted above, proof of a detrimental reliance claim does not require proof of an underlying contract. This is so because detrimental reliance is not based upon the intent to be bound. Morris [v. People’s Bank & Trust Co. of Natchitoches, 580 So.2d 1029 (La.App. 3d Cir.1991), writs denied, 588 So.2d 101, 102 (La.1991) ], 580 So.2d at 1036 (quoting A Student Symposium, The 1984 Revision of the Louisiana Civil Code’s Articles on Obligations: Detrimental Reliance, 45 La.L.Rev. 747, 765-66 (1985)). Rather, the basis of detrimental reliance is “the idea that a person should not harm another person by making promises that he will not keep.” Id. Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promi-sor should have expected the promisee to rely upon it, and whether the promis-ee so relies to his detriment. Id. Therefore, we reject the City’s argument that Suire’s detrimental reliance claim should be dismissed as a matter of law because Suire cannot establish a valid, enforceable contract.
Id. at 59.
As noted, the Suire ruling also involved a separate claim for breach of an oral contract between the City and the plaintiff. The summary judgment’s dismissal of that contract claim, which the Supreme Court affirmed, was not based upon the failure to follow a statutory rule for the confection of such City contact or any deficient power of the City’s agents to bind the City.
In contrast, the present case poses a different question. Since GSU’s agents were statutorily prohibited from binding the governmental institution to a term employment contract with Duckett, can the alleged cause of action for detrimental reliance, resting on those same agents’ promises, bind GSU for damages different from those of the completed term contract? The trial court recognized no difference between Duckett’s claims for breach of the unauthorized four-year contract and detrimental reliance. Our remanding of the case for trial for adjudication of any disputed fact issues requires us to 1^identify the material differences between the two separate causes of action by addressing the above question.
The language of Article 1967 addresses the consequences of one party’s knowledge concerning the effect of his inducement/promise made to another. Yet, the knowledge and acts of the unauthorized agent of such party can obviously result in something different. In this case, the party is GSU, and its agents who made the promises to Duckett are not even named defendants. The president of the university and its athletic director were unauthorized to bind GSU to a term employment contract and they advised Duck-ett of that limitation. Did they make addi *485 tional promises within their authority or apparent authority from GSU upon which Duckett could reasonable rely to his detriment?
The record in this summary judgment proceeding indicates a two-step procedure for the GSU hiring process for a coach. First, the determination of the qualifications of the coach through the initiation of the interview process to his actual selection was apparently within the specific authority of the athletic director and the university president. After the person is selected, the Board then votes to enter into any contract negotiated in the selection process which might bind the university long term. This dual process has the following important features. The university’s agents, Judson and Mathieu, are delegated discretion and authority to act in the search process and make the selection of the coach. Second, the economic details of the ultimate contract of employment are necessarily involved in the decision process in both phases of the hiring procedure. The bridge |i:ibetween the two phases of the process in this case was Judson’s promise to present and support the four-year contract before the Board immediately in the summer of 2008 as Duckett came to Louisiana and commenced his first basketball season later in the fall. Judson’s ability to make such promise to Duckett in the process of his selection of a coach appears to be within his authority granted by the university. Duckett’s claim is that Judson’s promise to promote and move the four-year contract through the Board approval process was the enforceable promise upon which he reasonably relied and that Judson breached that promise.
A very similar case decided by the application of the detrimental reliance theory of the Second Restatement of Contracts is McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356, 480 N.E.2d 327 (1985). In that case the managing directors for music education in the school district interviewed and selected the plaintiff to fill a band director position immediately before the start of the school year. The plaintiff had become aware of the opening while living in Georgia and his acceptance of the job caused his move to Massachusetts. Plaintiff was told that his employment had to be approved by the school district committee in accordance with a statutory provision for school governance. However, “he was assured that approval would be no more than a ‘rubber stamp’ which would be granted upon the recommendation of the directors.” Id., 480 N.E.2d at 329. The directors also told the plaintiff of their informal polling of the members of the committee, and plaintiff even contacted one of the committee members. Upon plaintiffs commencement of this job, the |14directors never submitted his name to the superintendent of schools and the school committee, and after 3-1/2 weeks of teaching, plaintiff was fired. Plaintiff sued for the breach of a one-year teaching contract and his entire salary for the year, and alternatively for detrimental reliance.
The Massachusetts court of appeal first ruled that the public policy interest of the statute requiring formal approval of the school district committee precluded the award of damages for the breach of the proposed one-year contract. However, turning to the alternative claim for detrimental reliance, the court explained:
While [the statute] denies the directors ultimate hiring authority, the statute does not preclude the interviewing and negotiating with prospective applicants by subordinates of the school committee. Implicit in the jury verdict is a finding that, at the very least, the directors gave the plaintiff a subsidiary promise that, barring some valid reason, they would submit his name to the superintendent and the school committee. The record does not suggest that this *486 subsidiary promise to recommend the plaintiff was beyond their authority or that it offends any statute or legislative policy.
* ⅝ M* * * *
No rule requires that agents of the defendants, acting within the scope of their authority, be totally exempt from the principles of fair dealing or be permitted to act arbitrarily. On the record before us, the promise does not require any relaxation of the requirements of law intended to protect the public interest and appears authorized. Indeed, the promise may be viewed as vital and proper to obtain needed services for the defendants. We see no reason not to enforce it.
McAndrew, supra, 480 N.E.2d at 331. Citing the section of the Restatement of Contracts, the court concluded that “[t]here is no question that the directors’ subsidiary promise falls within the section and that reliance can form the basis of an enforceable promise in Massachusetts.”
In contrast to the view of detrimental reliance of McAndrew, GSU cites the examination of such claim under Article 1967 in J.D. Barnett, \^supra. Barnett involved the promotion of a coach at Northwestern State University of Louisiana (“NSU”) to the job of athletic director. Barnett had existing employment as the head basketball coach at the time that NSU’s president, Dr. Alost, began a process to first give Barnett the dual title role of coach and athletic director in the final year of the employment of the existing athletic director (“AD”), who was retiring. Substantively, however, the retiring AD was to remain in his duties during that year. This employment change was to be followed one year later by full promotion of Barnett into the AD position as the AD retired. The Board of Trustees for State Colleges and Universities partially approved the coach’s advancement, giving him only however the title of associate AD. This also involved no change in his salary. However, before the AD position came open the following year, Dr. Alost retired from the presidency. The new university president eventually selected a different AD instead of Barnett.
After affirming the trial court’s determination of no breach of contract, the First Circuit examined the critical elements for a claim for detrimental reliance. The court again reiterated that the president’s promise for the promotion of plaintiff to AD was always presented with the requirement of the Board of Trustees’ approval as required by law. The most significant reason for the court’s decision rejecting the claim rested on the failure of plaintiff to demonstrate a change of position in reliance on the president’s promise. Unlike Duckett, who was encouraged to leave his employment in another state where he was receiving a greater salary, Barnett made no such change in employment. Thus, the president’s promise | ,fiof a promotion did not cause Barnett to act to his detriment. Likewise, while the Barnett court dismissed the president’s authority as an agent to bind the Board of Trustees and the institution by promises of the possible promotion, we find that the recruitment authority for potential coaches was authority in Judson and Mathieu to negotiate with and coax new candidates to leave their positions and come to GSU. Moreover, because of these factual differences between this case and Barnett, summary judgment is not the appropriate procedure for the present facts to be weighed. Suire, supra.
Accordingly, from review of the law of detrimental reliance under Article 1967 and in view of the clear change in position made by Duckett resulting from Judson’s alleged inducement to come to GSU, we find material fact issues which require a trial on the merits. While GSU may not *487 be held liable for any salary after Duck-ett’s termination or for liquidated damages, the reduction of Duckett’s salary upon his move to Louisiana amounts to a different damage claim. On remand, Article 1967 gives the trial court authority to fashion a remedy for any injustice that may be established while at the same time not offending the policy of La. R.S. 17:3305(A).

Conclusion

Finding material issues of fact regarding appellant’s claim for detrimental reliance, we reverse the summary judgment rendered by the trial court. Costs of this appeal are assessed to appellees in the amount of $122.00, in accordance with La. R.S. 13:5112.
REVERSED AND REMANDED.
STEWART, J., concurs with the result.
SEXTON, J., Pro Tempore, concurs in the reversal of the summary judgment.

. The negotiations were being conducted between Winston Decuir and Linda Law Clark (attorneys for GSU and the Board) and Stu Brown (Duckett’s attorney).

. Duckett’s initial petition referred to the defendant as "Grambling State University through the Louisiana Board of Trustees for Colleges and Universities a/k/a University of Louisiana Systems,” but the defendant’s answer informed the plaintiff that the defendant’s name was incorrectly stated. After obtaining the court's permission, the plaintiff amended his petition to correct the defendant’s name on July 15, 2010. The defendant’s correct name is the Board of Supervisors for University of Louisiana System, the Management Board of Grambling State University.