DONNA SAXONIS & another[1] *vs.* CITY OF LYNN & others.[2] No. 02-P-1350. November 8, 2004. *Practice, Civil,* Summary judgment. *School and School Committee,* Appointment of personnel. *Estoppel. Contract,* What constitutes, Promissory estoppel, Employment. *Labor,* Fair representation by union.

The plaintiff, Donna Saxonis, alleges that she closed her beauty salon busi-

---

[1]Her husband, Paul Saxonis.

[2]The mayor of the city of Lynn; Lynn school committee members from 1996 to 2001; Lynn public schools; James Mazareas, superintendent, James T. Leonard, retired superintendent, Edward B. Johns, deputy superintendent, and Patricia M. Libby, director of human resources, Lynn public schools; Bartley J. Conlon, principal, Albert G. Malagrifa, retired principal, Joseph O'Hagan, vice principal, Lorraine A. LeBrun, teacher, and Evelyn G. Lazaris, retired teacher, Lynn Vocational Technical Institute; Lynn Teachers Union, Local 1037, American Federation of Teachers and Joseph G. Gauvain, union president.

ness of twenty-three years in December, 1996, in order to act as a permanent substitute for one Evelyn Lazaris, a cosmetology teacher at Lynn Vocational Technical Institute, in reliance on the assurances of the school's principal, Albert Malagrifa, and others at Malagrifa's direction, that Lazaris, then on indefinite leave, would be retiring at the end of the school year and that he would hire Saxonis to replace her. She further alleges that Lazaris did so retire but that Malagrifa instead hired one Lorraine LeBrun, who had falsified her job application, and that Malagrifa had improperly segmented Saxonis's employment as Lazaris's substitute to prevent her from accruing seniority. These were the central allegations of the plaintiffs' twenty-one count complaint against the twenty-six named defendants. Acting on separate motions by the school and city defendants and the union defendants, a judge of the Superior Court granted summary judgment on all of the plaintiffs' claims.

1. Saxonis claims that the judge erred in granting the defendants' motion to strike her opposition to their statement of material facts, and in denying her motion to strike the defendants' statement of facts. The judge deemed the defendants' statement of facts admitted for the purposes of the summary judgment motion. This ruling was within the judge's discretion and we will not disturb it. *Dziamba* v. *Warner & Stackpole LLP*, 56 Mass. App. Ct. 397, 401 (2002). Nonetheless, none of our conclusions below would be different had the judge not deemed as admitted the defendants' statement of facts.

2. In acting on the motions for summary judgment, the judge was required, as are we, to accept Saxonis's allegations that Malagrifa and others acting on his behalf promised her employment both as a permanent substitute for Lazaris during the 1996-1997 school year, and as her replacement thereafter when she retired. See *Hull* v. *Massachusetts Port Authy.*, 441 Mass. 508, 509-510 (2004). First, as to Malagrifa's promises to keep Saxonis in service as a permanent substitute, they cannot be enforced because they run counter to the express legislative policy that made her, as matter of law, an at-will employee. See G. L. c. 71, § 42, as amended through St. 1993, c. 71, § 44. Moreover, Saxonis was presumed to know that these representations were contrary to law and that she could not rely on them. See *McAndrew* v. *School Comm. of Cambridge*, 20 Mass. App. Ct. 356, 361 (1985); *Harrington* v. *Fall River Housing Authy.*, 27 Mass. App. Ct. 301, 307-310 (1989). Next, in contrast, Malagrifa was vested by law with the authority, subject to approval by Lynn's superintendent of schools, to hire Saxonis as Lazaris's replacement, see G. L. c. 71, § 59B, although he would not have been required to retain her for the ninety-day period necessary under G. L. c. 71, § 42, to give her rudimentary rights to notice and a hearing prior to dismissal. As explained in *McAndrew*, the promise or representation that was within Malagrifa's authority may form the basis for a detrimental reliance claim. *Id.* at 362-365. A jury could reasonably conclude that, based on Malagrifa's promises and Saxonis's detrimental reliance thereon, a contract was formed to hire Saxonis as Lazaris's replacement (on an at-will basis), and that Saxonis could recover reliance damages (primarily from closing her business) for the breach. See *ibid.* See also *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978). Cf. *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian*, 419 Mass. 841, 848-850 (1995). Summary judgment should therefore not have been allowed on so much of Saxonis's complaint as alleges detrimental reliance by Saxonis arising out of the August, 1997, hiring of LeBrun. Finally, Saxonis's claims

regarding inadequate compensation for work she performed during the 1996-1997 school year were not dealt with by the judge and must be remanded for further factual development.

3. In count II of her complaint Saxonis alleges wrongful termination on two occasions while she served as a substitute for Lazaris: her replacement by another teacher for a period from February to March of 1997, and upon Lazaris's return from leave in May, 1997. With regard to the first incident, Saxonis has raised an inference that Malagrifa sought to rotate substitute teachers to save money for the district (due to the salary difference between day-to-day and long-term substitute teachers) and to prevent her from achieving seniority status. However, we agree with the trial judge that Saxonis has failed to identify a "clearly established public policy" violated in either instance. See *King* v. *Driscoll*, 418 Mass. 576, 582 (1994). She has cited no authority, either in statute, case law, or the collective bargaining agreement, establishing such a policy. While placement of an unlicensed and uncertified teacher as a long-term substitute was likely improper, it did not violate any employment rights clearly vested in Saxonis. See, e.g., *id.* at 583-585 & n.7. Another teacher could have been selected to replace Saxonis at any time. Finally, Saxonis's claim for breach of the covenant of good faith and fair dealing cannot succeed as her complaint does not allege that her termination served to deprive her of compensation owed for past performance. See *King* v. *Driscoll*, 424 Mass. 1, 6-7 (1996); *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 473 (2001).

4. Saxonis's claim that the union breached the duty of fair representation in refusing to pursue her complaint of not being named Lazaris's successor fails (even if she was a member of the bargaining unit) because she has demonstrated no reasonable expectation of proving that the union's conduct was "arbitrary, discriminatory, or in bad faith" or "perfunctory or demonstrative of inexcusable neglect," *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990) (citations omitted), as contrasted with a reasonable, good faith assessment that her grievances lacked merit. See *id.* at 609. See also *Cappellano* v. *Massachusetts Bay Transp. Authy.*, 38 Mass. App. Ct. 231, 235 (1995). Cf. *National Assn. of Govt. Employees* v. *Labor Relations Commn.*, 38 Mass. App. Ct. 611, 613 (1995), in which the plaintiff was simply ignored. Saxonis's other allegations against the union are untimely and conclusory.

5. We dispose of Saxonis's remaining claims as follows. (a) Count III (civil conspiracy and wrongful termination): Saxonis's bare and conclusory allegations of a grandiose plot and coverup to prevent her hiring cannot survive summary judgment. Saxonis has failed to show a reasonable expectation of proving that any defendants acted in concert to unlawfully deprive her of employment. (b) Count IV (tortious interference with contractual or advantageous business relations): In his official capacity, Malagrifa is immune from liability under G. L. c. 258, § 10(c). To the extent he is sued in his individual capacity, Malagrifa cannot be liable for interfering with his own hiring decision. Saxonis's claims for tortious interference with her at-will employment during the 1996-1997 school year are also time-barred. Her argument regarding potential claims against all other defendants has not been sufficiently developed within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). (c) Count V (fraud and deceit): Saxonis's complaint pleaded with requisite specificity only the actions of LeBrun, and the judge

did not err by addressing only this claim. See Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974). On appeal, Saxonis states, without elaboration, that her "fraud prayer is much more extensive than Defendant LeBrun." We affirm the judge's dismissal of the claim against LeBrun for the reasons stated below and deem Saxonis's claim against all other parties waived. (d) Counts VI and VII (intentional infliction of emotional distress) and Counts X to XV (negligent hiring, retention, and supervision) are insufficiently argued to merit discussion. See Mass.R.A.P. 16(a)(4). Saxonis merely states that the motion judge erred in ruling that these claims are barred by the exclusivity provisions of the workers' compensation statute but does not go on to argue that the admissible evidence would warrant findings in her favor on their respective elements. (e) Counts VIII and IX (defamation) and Count XX (invasion of privacy) relate to Saxonis's employment interview on August 6, 1997, during which Lazaris served as hiring consultant to Malagrifa. Both claims fail as matter of law as the employer's actions were privileged. Saxonis has shown no reasonable expectation of proving her conclusory allegations that the meeting was a pretext for Malagrifa and Lazaris to subject her to a barrage of false accusations rather than a legitimate interview for the position. Count XVI (false imprisonment), also relating to the August 6, 1997, job interview, fails as matter of law. See *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 91-92 (1987). (f) Count XVII (Massachusetts Civil Rights Act violation) fails because nowhere in the pleadings or the record is there any indication of interference with or an attempt to interfere with Saxonis's rights by "threats, intimidation, or coercion." See G. L. c. 12, §§ 11H, 11I. (g) The only discernable basis for Count XVIII (due process) is the assertion that Saxonis was entitled to written notice and a hearing before Lazaris returned in May, 1997. Even if Saxonis is treated as having served the requisite ninety days to give her hearing rights (see G. L. c. 71, § 42), no process was due under the statute as Lazaris had the right to return from leave at any time. Cf. *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 215-216 (1982). (h) Count XIX (invasion of privacy) is waived by the failure to argue it on appeal. Moreover, the claim is time-barred. (i) Paul Saxonis's loss of consortium claim (Count XXI) piggybacks his wife's claims. We are unaware of any consortium cause of action solely for breach of an employment contract. See *Sena* v. *Commonwealth*, 417 Mass. 250, 265 (1994) (loss of consortium requires a tortious injury of spouse); *Zhang* v. *Massachusetts Inst. of Technology*, 46 Mass. App. Ct. 597, 607 (1999) (same). Moreover, Paul Saxonis's allegations appear to arise primarily from the effect of this litigation on the marriage rather than his wife's having suffered an illness or injury as a direct result of defendants' actions, consequent to which he, in turn, lost her society, companionship, or sexual availability. *Ibid.*

6. In accordance with this opinion, the judgment is affirmed as to all counts with the exception of that portion of count I relating to detrimental reliance and amounts owed for work performed during the 1996-1997 school year. As to that portion, the judgment is vacated and the matter is remanded to the Superior Court.

*So ordered.*

*Lester E. Riordan, III,* for the plaintiffs.

*James P. Lamarra* for city of Lynn & others.

*James J. Carrigan* for Lynn Teachers Union, Local 1037, & another.