Kenton-Walker, Janet, J.
The plaintiff, Donna Byrnes (“Byrnes”), brings this action against the individual members of the Worcester School Committee (“Committee”); Deirdre Loughlin (“Loughlin”), the Interim Superintendent of the Worcester School System (“school system”); and the City of Worcester (collectively, “defendants”). Byrnes’ claims arise out of her termination from a Moderate Special Needs Teacher position with the school system. She asserts the following claims against the defendants: (1) termination of employment and deprivation of properly interest without due process of law (Count I); (2) false, defamatory accusations and termination of employment-deprivation of liberty interest without due process of law (Count II); (3) breach of contract (Count III); (4) civil conspiracy (Count IV); (5) violation of the Massachusetts Wage Act, M.G.L.c. 149, §148 (Count V); (6) violation of the covenant of good faith and fair dealing (Count VI); and (7) defamation-libel (Count VII).[3] The action is now before the court on the defendants’ motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, defendants’ motion is ALLOWED as to Counts I, III, IV, and VI, and DENIED as to Count VII, and ALLOWED as to Counts II and V, unless plaintiff amends her complaint in accordance with the court’s order within ten (10) days.

BACKGROUND

The facts as asserted in the complaint allege that Byrnes was hired by the school system in 1994. She was promoted in 2000 to Office Manager for the Superintendent of Schools (“office manager”). While at the superintendent’s office, she performed her duties with excellence. She also worked with the school system’s special education mobility coordinator to initiate a program whereby special education students worked in the superintendent’s office to prepare them for transitioning into the workplace. For six years Byrnes supervised students participating in that program.
The former superintendent retired in 2008, and was replaced by Loughlin. In late 2008 or early 2009, Loughlin informed Byrnes that the officer manager position was being eliminated. Thereafter, Loughlin and the school system’s human resources manager (“HR manager”) met with Byrnes to assist her in looking and applying to other suitable employment within the school system. During the meeting, they discussed Byrnes’ interest in special education.
In January 2008, Loughlin, Byrnes, and the HR manager discussed an opening for a Moderate Special Needs Teacher at Chandler Elementary School (“Chandler”), which involved teaching reading to moderate special education students in Grade 1 through 6. With Loughlin present, the HR manager called Chandler’s principal to inquire whether he was agreeable to Byrnes filling the vacant position. The principal, who had interacted with Byrnes during her tenure as office manager and was aware of Byrnes’ credentials, work ethic, and education, recommended Byrnes to Loughlin for the Moderate Special Needs Teacher position at Chandler.
*355 Byrnes received a written teacher’s contract from the school system dated January 20, 2009, and signed by Loughlin (“contract”). The contract states, “The Superintendent. . . based upon the recommendation of the principal, favorably considered your application as a teacher . . . and has appointed you as a teacher ... for the school year beginning February 2, 2009 at an annual salary of $60,059[.]” It further states Byrnes’ “appointment is subject and governed by the applicable Massachusetts Laws relative to the employment of teachers . . .” Up to the time of the contract, Byrnes had been working in WPS-Administrative rather than WPS-Teaching.
The school system requires that special education teachers have the following qualifications: (1) a bachelor’s degree; and (2) a Massachusetts Department of Elementary and Secondary Education (“DESE”) special education license, or a paid license application on file with the DESE so the school system can obtain a waiver for the teacher. Byrnes received a waiver from the DESE, dated March 20, 2009, for the Moderate Special Needs Teacher position.
Byrnes began teaching on February 2, 2009, and joined the Education Association of Worcester, to which she paid union dues. On the morning of March 24, 2009, Byrnes opened the Worcester newspaper and read a story that claimed she had been fired from her teacher position. Byrnes turned on her television, after receiving a telephone call advising her to do so, and watched Konstantina B. Lukes (“Lukes”), Worcester mayor and Chairwoman of the Committee, state that Byrnes had been fired for lacking a teacher certification. Byrnes telephoned Chandler’s principal, who said he did not know of Byrnes’ termination and expressed his expectation that she would be at work that day. Byrnes telephoned Loughlin and reached Loughlin’s husband, to whom she explained the situation. Later the same day, Loughlin left Byrnes a message, asking her to see Loughlin at her office at the end of the school day.
Byrnes went to see Loughlin the afternoon of March 24, 2009, and was allegedly told that due to the negative media attention and telephone calls the school system had received, Loughlin had no choice but to terminate Byrnes. Loughlin apologized, and handed Byrnes a termination letter dated March 20, 2009. On the date of her termination, Byrnes was not paid the earned vacation time, personal time, and sick days owed her.
As of March 24, 2009, approximately thirty-nine other teachers in the school system — including special education teachers — held waivers from the DESE to teach with the school system. The school system did not terminate any of these other teachers.
Lukes and the other individual defendants, all members of the Committee, conducted interviews with various media outlets (print, radio, and television), allegedly making false and defamatory statements regarding Byrnes’ qualifications for the Moderate Special Needs Teacher position. As a result of the statements made by the defendants, Byrnes claims she has suffered harm to her reputation, has been subjected to public contempt and ridicule, and has had difficulty obtaining new employment.

DISCUSSION

I. Standard of Review

When evaluating the legal sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl Corp., 550 U.S. at 557.

II. Byrnes’ Complaint A. Count I: Termination of Employment and Deprivation of Property Interest Without Due Process of Law

Byrnes claims she had a protected property interest in her employment as a teacher with the school system, and that the school system deprived her of due process by acting arbitrarily and capriciously in terminating her. The court finds that Byrnes did not have a protected property interest in her employment as a teacher, and concludes, therefore, that Count I must be dismissed for failure to state a claim upon which relief can be granted.
As the Supreme Court has stated,
The Fourteenth Amendment’s procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits . . . Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
Board of Regents of State Colls. v. Roth, 408 U.S. 564, 576-77 (1972). Byrnes’ property interest in her employment with the school system “was created and defined by the terms of [her] appointment.” Id. at 578. Byrnes’ contract states that her appointment is “for *356 the school year beginning February 2, 2009.” It does not provide for the automatic renewal of her teacher position at the end of the school year.[4] The contract also explicitly states Byrnes’ appointment is subject to and governed by the Massachusetts laws relevant to the employment of teachers. One such law is G.L.c. 71, §42, which provides that teachers with more than ninety days of service in a school system have a right to receive written notice of and reasons for a school system’s intent to dismiss the teacher. It further provides that teachers with professional teacher status (tenure) “shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards.” Teachers with less than ninety days of service are deemed employees at will, and are not entitled to written notice of or an opportunity to respond to a dismissal. See G.L.c. 71, §42 (discussing process due teachers with at least ninety days service and then stating, “Teachers without professional teacher status shall otherwise be deemed employees at will”).
Thus, neither Byrnes’ contract nor state statutory law, secured the interest of Byrnes — a non-tenured teacher with less than ninety days of service — in continued employment with the school system, along with dismissal only for cause, or notice of and an opportunity to respond to dismissal.[5] As such, Byrnes has no colorable claim that the school system deprived her of a protected property interest without due process of law. See Roth, 408 U.S. at 578 (where nothing secured teacher’s reemployment, he had only “abstract concern” in being rehired, not protected property interest, and university not obligated to give him due process upon termination); Stetson v. Board of Selectmen of Carlisle, 369 Mass. 755, 759-60 (1976) (where police officer served “at pleasure” of town and no statute required he be given notice of reasons for dismissal, he had no property interest in employment and no due process violation).[6] Count I must therefore be dismissed pursuant to Mass.R.Civ.P. 12(b)(6).

B. Count II: False, Defamatory Accusations and Termination of Employment-Deprivation of Liberty Interest Without Due Process of Law

In her complaint, Byrnes alleges she was deprived of a liberty interest in her employment with the school system without due process because of the defendants’ alleged defamation. The court finds Byrnes sufficiently asserts a due process claim based on a liberty interest, but that she must amend her complaint to request a name-clearing hearing, the appropriate remedy for such a claim.
According to the Supreme Court, "Where a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.” Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). In Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court undertook a lengthy analysis of government imposed stigmas on individuals’ reputations. It noted that “the Court has never held that the mere defamation of an individual. . . was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment ” Id. at 706 (emphasis added). The Court held that the plaintiffs asserted interest in his reputation was not “ ‘liberty’ . . . guaranteed against state deprivation without due process of law” where there was governmental defamation alone, with no effect on any government employment. Id. at 706-12; see also Arnett v. Kennedy, 416 U.S. 134, 157 (1974) (“But . . . liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee”).
As discussed under Count VII below, Byrnes asserts a colorable claim of defamation against the defendants. According to the complaint, termination of Byrnes’ government employment and interference with her ability to obtain new employment accompanied the defamation. These allegations are sufficient to state a claim that Byrnes’ liberty interest in her “good name, reputation, honor, or integrity” has been harmed by the government’s actions. See Paul, 424 U.S. 706-12; see also Stetson, 369 Mass. at 764 (“[P]laintiff has asserted sufficient facts which, if true, support his claim that he may be foreclosed from a ‘range of opportunities’ for employment” (quoting Roth, 408 U.S. at 574)); Grant v. Police Comm’r of Boston, 7 Mass.App.Ct. 296, 298-99 (1979) (“Due process affords protection against damage to a person’s standing and associations in the community, and against actions by an employer which foreclose employment opportunities because these are liberty interests within the reach of the Fourteenth Amendment. . .”).
As the Court has made clear, however, if a plaintiff “make[s] out a claim of stigmatization . . . the remedy mandated by the Due Process Clause of the Fourteenth Amendment is ‘an opportunity to refute the charge.’ ” Codd v. Velger, 429 U.S. 624, 627 (1977), quoting Roth, 408 U.S. at 573. While Byrnes has satisfied the prerequisite of a name-clearing hearing by asserting the falsity of the defendants’ statements, see id. at 627-28, she does not ask for such a hearing in her complaint. Instead, Byrnes seeks damages under Count II. Accordingly, the court will allow Byrnes to amend Count II to explicitly request a name-clearing hearing, the appropriate remedy here (see the court’s Order). See O’Connor v. Police Comm’r of Boston, 408 Mass. 324, 331 (1990) (no due process claim where plaintiff failed to request a name-clearing hearing).
C. Count III: Breach of Contract
In Count III, Byrnes asserts she had a valid contract with the school system that provided for her continued employment for the school year beginning Februaiy 2, *357 2009, and that the defendants breached the contract by terminating Byrnes before the end of the school year. While Byrnes has shown she had an employment contract, she does not allege sufficient facts to show the defendants breached the contract.
Byrnes’ contract states that her appointment is subject to and governed by the Massachusetts laws applicable to the employment of teachers. As discussed under Count I above, G.L.c. 71, §42 classifies Byrnes as an at-will employee because she was not tenured and was not employed at least ninety days when the school system terminated her. It is well-settled that “[e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992), quoting Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 9 (1988). Byrnes cannot maintain a breach of contract claim where both common law and statutory law permit the school system to terminate her at any time, for any reason, and without notice. Count III must therefore be dismissed for failure to state a claim upon which relief can be granted.

D.Count IV: Civil Conspiracy

Byrnes alleges the individual members of the Committee acted in concert to exert pressure on Loughlin to terminate Byrnes. The court finds these facts insufficient to state a claim of civil conspiracy.
There are two types of civil conspiracy recognized in Massachusetts. In the first type, the defendants combine to exert “some ‘peculiar power of coercion [over] the plaintiff . . . which any individual standing in a like relation to the plaintiff would not have had.’ ” Fleming v. Dane, 304 Mass. 46, 50 (1939); see also Kurker v. Hill 44 Mass.App.Ct. 184, 188 (1998) (“[T]he wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct”); Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994) (citing “very limited cause of action” outlined in Fleming). The second type involves the concerted action of the defendants: there must be “a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and . .. proof of some tortious act in furtherance of the agreement.” Aetna Cas. Sur. Co., 43 F.3d at 1564.
Byrnes fails to assert a claim for the first type of civil conspiracy because that requires coercion exerted upon the plaintiff, whereas Byrnes alleges the defendants exerted pressure upon Loughlin. She also fails to assert a claim for the second type. Byrnes does not allege any agreement or plan amongst the members of the Committee to wrongfully terminate her employment. See Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 415-16 (2002) (no error in judge’s refusal to submit civil conspiracy claim to jury where plaintiffs presented no evidence of agreement among defendants); Saxonis v. Lynn, 62 Mass.App.Ct. 916, 918 (2004) (“Saxonis’s bare and conclusory allegations of a grandiose plot and coverup to prevent her hiring cannot survive summary judgment”). Her allegation that the defendants acted in concert is merely a “label[ ] and conclusion! ]” insufficient to survive a motion to dismiss. Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 550 U.S. at 555. Accordingly, because Byrnes has not alleged sufficient facts to state a claim of civil conspiracy, Count IV must be dismissed under Mass.R.Civ.P. 12(b)(6).

E.Count V: Violation of the Massachusetts Wage Act, M. G.L.c. 149, §148

In her complaint, Byrnes alleges that on the date of her termination she was not paid the vacation time, personal time, and sick days due her at that time. Under G.L.c. 149, §148, “any employee discharged from such employment shall be paid in full on the day of his discharge.” See also Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass.App.Ct. 599, 602 (2003). The defendants move to dismiss Count V because Byrnes fails to allege she followed the procedure outlined in G.L.c. 149, §150, whereby a plaintiff must file a complaint of a violation of G.L.c. 149, §148, with the attorney general before proceeding with a private claim against a defendant.
Because the court finds Byrnes has sufficiently alleged the defendants violated G.L.c. 149, §148, by failing to pay her amounts owed to her on the date of her termination, it will give Byrnes leave to amend her complaint to allege under Count V that she followed the requirements of G.L.c. 149, §150 (see the court’s Order).

F.Count VI: Violation of the Covenant of Good Faith and Fair Dealing

Byrnes alleges she had an employment relationship with the school system and that the defendants’ actions, “taken in order to avoid the media scrutiny,” breached the covenant of good faith and fair dealing between employer and employee. The court concludes .that though Byrnes’ contract included an implied covenant, Byrnes has not alleged facts showing the defendants breached the covenant.
Every contract includes an implied covenant of good faith and fair dealing. See Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991); Fortune v. National Cash Register Co., 373 Mass. 96, 101 (1977) (implied covenant in written employment contract). In the employment context, an employer may be liable for breaching the covenant if its termination of an employee deprives the employee of compensation for services performed. See Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 388 (2005); King v. Driscoll 424 Mass. 1, 6-7 (1996); see also Saxonis, 62 Mass.App.Ct. at 918. “There is no general duty on the part of an employer to act ‘nicely.’ ” Ayash, 443 Mass. at 385.
*358 As discussed above, Byrnes alleges sufficient facts to show she had an employment contract with the school system. However, she fails to allege that the school system’s termination of her employment deprived her of compensation for services she had already performed as a teacher. She, therefore, has not asserted a claim for breach of the implied covenant of good faith and fair dealing. See Saxonis, 62 Mass.App. at 918 (“[Employee’s] claim for breach of the covenant . . . cannot succeed as her complaint does not allege that her termination served to deprive her of compensation owed for past performance”); see also King, 424 Mass. at 7 (employee failed to prove breach of covenant claim “because he has failed to present evidence that he was denied compensation for work performed”).[7] Count VI must be dismissed.
G. Count VII: Defamation-Libel
Byrnes alleges the defendants made false statements to various media regarding her qualifications for the Moderate Special Needs Teacher position, and that the defendants made the statements maliciously and with intent to harm her. She further alleges the statements damaged her in that she has been unable to secure other employment due to harm to her reputation, has been subjected to public ridicule and contempt, and has suffered severe emotional distress. The defendants claim first that Byrnes has not alleged any specific statements made by them, and second that they are entitled to a qualified privilege because they are public officials. The court concludes Byrnes has sufficiently alleged defamatory statements, and she may proceed with her defamation claim where she alleges enough facts to remove any conditional privilege the defendants may have enjoyed.
“Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt.” Correllas v. Viveiros, 410 Mass. 314, 319 (1991). Byrnes sufficiently pleads defamatory statements made by the defendants. She alleges they made statements “that she was not appropriately qualified for the [teacher] position when in fact she held the appropriate qualifications through [a] state waiver . . .”[8] Byrnes claims that as a result of the defendants’ statements, she has suffered public contempt and ridicule. She alleges the falsity of statements that she was not qualified for her teacher position by citing the waiver she received from the DESE. See Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 132 (1998) (“[T]he falsity of the defendant’s defamatory statement regarding matters of public concern remains a prerequisite to recovery”).
While it is true that “ [statements made by public official while performing their official duties are conditionally privileged,” Mulgrew v. Taunton, 410 Mass. 631, 635 (1991), the conditional privilege is lost if public officials act with actual malice in making the defamatory statement. See Tosti v. Ayik, 386 Mass. 721, 726 (1982). Here, Byrnes alleges the defendants acted maliciously in making the defamatory statements, and further alleges she was singled out among thirty-nine other teachers within the school system that also held waivers from the DESE. At this early stage of litigation, these allegations are sufficient to “negate[] the lawful exercise of a conditional privilege.” Disend v. Meadowbrook School, 33 Mass.App.Ct. 674, 677 (1992) (where plaintiff alleged statements were malicious and false, judge erred in dismissing plaintiffs defamation claim because it was not possible, on basis of complaint, to determine whether conditional privilege applied). Accordingly, Count VII may not be dismissed pursuant to Mass.R.Civ.P. 12(b)(6).

ORDER

Based on the forgoing, it is hereby ORDERED that the defendants’ motion to dismiss be ALLOWED as to Counts I, III, IV, and VI; ALLOWED as to Count II, unless Byrnes amends her complaint within ten (10) days to request a name-clearing hearing; ALLOWED as to Count V, unless Byrnes amends her complaint within ten (10) days to reflect compliance with G.L.c. 149, §150; and DENIED as to Count VII.

Throughout this decision, the court will correct the following errors in the titles to several of Byrnes’ claims: (1) the misspelling of “deprivation” as “depravation” in Counts I and II; and (2) the use of “liable” in Count VII, which the court assumes was meant to be “libel.”

Nor would it be likely for a non-tenured teacher’s contract to so indicate. General Laws c. 71, §41, provides that a non-tenured teacher “shall be notified in writing on or before June fifteenth whenever such person is not to be employed for the following school year. Unless such notice is given as herein provided, a [non-tenured] teacher. .. shall be deemed to be appointed for the following school year.” This statute cannot be considered as granting to Byrnes a protected property interest in continued employment with the school system. At the time the school system terminated Byrnes, March 2009, she had merely a “unilateral expectation” that her appointment would be renewed (meaning, she would not receive written notice on or before June fifteenth that she was not to be employed for the next school year), rather than a “legitimate claim of entitlement” to continued employment. Roth, 408 U.S. at 577 (entitlement to, not mere expectation in, property interest required for due process to attach).

Bymes does not allege in her complaint that any of the school system’s rules or regulations somehow entitled her to continued employment, or that any circumstances of her employment did so. See Perry v. Sindermann, 408 U.S. 593, 600, 602 (1972) (stating, where teacher pointed to provision in faculty guide, “A teacher, like the respondent, who has held his position for a number of years, might be able to showfrom the circumstances of this service — and from other relevant facts — that he has a legitimate claim of entitlement to job tenure”).

The court acknowledges Byrnes’ argument that the defendants should be equitably estopped from moving to dismiss her due process claims, Counts I and II. The court concludes, however, that equitable estoppel is inappropriate here because it is asserted against governmental defendants. *359 See LaBarge v. Chief Admin. Justice of the Trial Court, 402 Mass. 462, 468-69 (1988) (“Generally, the doctrine of estoppel Is not applied against the government In the exercise of its public duties . . . [and] is not applied to government acts where to do so would frustrate a policy intended to protect the public interest.”) (internal quotations and citations omitted).

Because the school system was not obligated to act nicely towards its employees, Byrnes’ allegation that the school system terminated her to avoid the media scrutiny it had received fails to state a claim for breach of the implied covenant of good faith and fair dealing. See Ayash, 443 Mass. at 385-86 (where employee alleged employer treated her unfairly, including “singling [her] out ... for ‘scapegoat’ treatment,” employee “did not present a claim on which she could recover”). Additionally, to the extent Byrnes claims her career prospects have been harmed as a result of the school system’s alleged breach of the covenant of good faith and fair dealing, she may not recover for such damages under this claim. See id. at 388 (employer not liable under claim of breach of covenant for “negative effects on the plaintiffs future career”).

There is some disagreement in this court regarding whether defamation requires heightened pleading, based on differing interpretations of Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 432 n.7 (1991), in which the Supreme Judicial Court discussed the heightened pleading standard for defamation applied in federal courts. See, e.g., Moriarty v. Sullivan, 2006 WL 2089773, at *2-3 (Mass.Super. 2006) [21 Mass. L. Rptr. 254] (heightened pleading standard not adopted in Eyal), order aff'd sub nom. Moriarty v. Mayor of Holyoke, 71 Mass.App.Ct. 442 (2008); Endodontics Assocs. v. Johnston-Neeser, 2006 WL 933427, at *4-5 (Mass.Super. 2006) [20 Mass. L. Rptr. 677] (interpreting Eyed to require heightened pleading); Chan v. Immunetics, Inc., 1999 WL 218490, at *4 (Mass.Super. 1999) [9 Mass. L. Rptr. 719] (no indication in Eyal that heightened pleading standard adopted). Because the Supreme Judicial Court has not explicitly adopted such a standard, the court will apply the traditional standard to Byrnes’ defamation claim.