Ricciardone, David, J.
The plaintiff, Donna Bymes (“Bymes”), filed this action in Superior Court against the individual members of the Worcester School Committee; Deirdre Loughlin (“Loughlin”), Interim Superintendent of the Worcester School System; and the City of Worcester (collectively, “the defendants”). Byrnes’s second amended complaint asserts three claims: false, defamatory accusations and termination of employment — depravation of liberty interest without due process of law (Count I), violation of the Massachusetts Wage Act (Count II), and defamation (Count III). These claims arise from Byrnes’s termination as a Moderate Special Needs Teacher in the Worcester School System. Bymes requests damages as well as a name-clearing hearing. This matter is now before the court on the motion of the defendants for summaryjudgment on all counts. For the following reasons, the defendants’ motion is ALLOWED in part and DENIED in part.[3]
Background
The following facts are taken from the parties’ Joint Statement of Undisputed Material Facts and the summary judgment record. Unless otherwise noted, these facts are undisputed.
Byrnes worked in the office of the Superintendent of the Worcester Public Schools from 1994 to 2009. In 2000, she was promoted to the position of Office Manager. After Superintendent James Caradonio retired in 2008, Bymes continued to work as Office Manager for Loughlin, his replacement. However, at some point in late 2008 or early 2009, Loughlin informed Bymes that her position was being eliminated. Loughlin and Byrnes met with Worcester Public Schools Human Resources Manager Stacey Luster (“Luster”) to discuss other employment opportunities for Byrnes within the school system. Bymes expressed an interest in special education. She explained that she had experience working with the Special Education Mobility Coordinator, and had helped initiate a program for special education students to prepare them to transition into the workforce. Additionally, Byrnes contends that for six years she supervised special education students working from the Superintendent’s Office.
In January 2009, Loughlin and Luster discussed with Byrnes an opening for a Moderate Special Needs Teacher at Chandler Elementary School. The position entailed teaching reading to moderate special education students between Grades 1 and 6. Byrnes states that Luster, with the approval of Loughlin, placed a call to the Principal of Chandler Elementary, School, Mark Berthiaume (“Berthiaume”), who had worked with Byrnes in the past. Berthiaume was open to interviewing Byrnes for the position.
The Moderate Special Needs Teacher position had two requirements. Individuals needed to possess a Bachelor’s degree, as well as either a Massachusetts Department of Elementary and Secondary Education license or a waiver of the license. Bymes held a Bachelor’s degree, however, she was not a certified or licensed teacher. As a result, Loughlin applied for a waiver for Bymes. The waiver was eventually granted. In order to obtain a teaching license, Bymes would need to pass the Massachusetts Test for Educator Licensure and fulfill certain course requirements and hour requirements for teaching. Bymes expected the certification process to take two years from the point she started in the position.
After interviewing for the position with Berthiaume, Byrnes received a written offer on January 20, 2009. The offer explained that the Superintendent had favorably considered her application and appointed her as a teacher beginning February 2, 2009. Byrnes and Loughlin signed a Teacher’s Contract which provided a salary of $60,059.
On March 22, 2009, the Worcester Telegram & Gazette ran an article entitled “Teacher’s Hiring Criticized.” The article reported that Bymes had been hired as a special education teacher despite not having a teaching license. School Committee Member John *158 Monfredo stated in the article that he was not sure of Byrnes’s qualifications. Two days later, on March 24, 2009, the Telegram & Gazette ran another article reporting that Worcester Public School officials were moving to fire Byrnes. Konstantina B. Lukes, Worcester Mayor and Chairwoman of the Worcester School Committee, was quoted as saying that Byrnes’s contract would be terminated. Ms. Lukes was also quoted as saying: “(Ms. Byrnes was] not qualified because she was not certified.” After reading the article, Byrnes called Berthiaume, who said he was unaware of her termination and expected her at school that day. Byrnes taught during the day, and that afternoon met with Loughlin, who informed her that she was fired. Byrnes’s termination was effective March 27, 2009. The defendants contend that Byrnes received all of the wages she was owed during the normal bi-weekly pay cycle. Byrnes alleges that she has still not received all of the payment due to her.
In the aftermath of plaintiffs termination, Ms. Lukes was also quoted as saying: “to pay someone who is not certified and does not have teaching experience— $75,000 as a special ed teacher can’t be justified.” The defendants made additional statements commenting on Ms. Byrnes’s lack of qualifications, such as: “(t]his is indefensible, we certainly need to make sure that we get teachers, especially in special ed, that are qualified” (attributed to defendant Monfredo), “if [the plaintiff] wants to teach special education, she should go back to school. [She] has to do what everyone else does” (defendant Bogigian), “[plaintiffs hiring] was an aberration. It was a mistake. It was a black eye on the school system . . .” (defendant Mullaney), and “[w]e all make mistakes. [New] measures will include more thorough vetting of job applicants’ credentials and more extensive background checks to ensure that employees — -such as Mrs. Byrnes — who lacks a teaching license, special education training and classroom experience — are not placed in classrooms with children” (defendant Loughlin).[4]
Discussion
A. Standard of Review
Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case, or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kourouvacilis, 410 Mass. at 716; Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the motion for summary judgment simply by resting on its pleadings and “mere assertions of disputed facts.” LaLonde v. Eisnner, 405 Mass. 207, 209 (1989). Instead, the nonmoving party must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
B. Defamation
I. Defamation Standard
. Byrnes’s defamation claim is based on a number of comments made by the defendants to local media outlets in the aftermath of her termination. To prevail on her claim, Byrnes “must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff.” White v. Blue Cross and Blue Shield of Mass., Inc., 442 Mass. 64, 66 (2004). A statement is defamatory if it “discredits a person in the minds of any considerable and respectable class of the community.” Milgroom v. News Group Boston, Inc., 412 Mass. 9, 12 (1992). Although a statement that merely expresses the defendant’s opinion, rather than fact, generally cannot be defamatory, a statement of opinion may be defamatoiy if it implies an underlying assertion of objective fact. Milkovich v. Lorain Journal, 497 U.S. 1, 18 (1990); King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987).
“The determination whether a statement is a factual assertion or an opinion is a question of law if the statement unambiguously constitutes either fact or opinion.” Id. at 709 (internal quotations and citation omitted). However, “the determination whether a statement is a factual assertion or is a statement of pure opinion is a question of fact if the statement reasonably can be understood both ways.” Id. (internal quotations and citation omitted). To determine whether, as a matter of law, a statement is an opinion or an assertion of fact, the “primary question for determination ... ‘is whether the words themselves, taken in their natural sense, and without a forced or strained construction’ can be understood as stating a fact.” Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 341 (1980), quoting Peck v. Wakefield Item Co., 280 Mass. 451, 453 (1932) (internal citation omitted). The court must “examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which *159 it is published.” Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 734 (1986) (internal citations omitted).
II. The Defendants’ Statements of True Fact and Statements of Opinion
In the present case, none of the statements made by the defendants contained in the record are defamatory. The majority of these statements either express true facts or simply evince the speaker’s opinion. For example, on March 24, 2009, Lukes said in the Telegram & Gazette that “(h]er contract is going to be terminated as a teacher.” (Joint Appendix Exh. 23.) Such a statement cannot be defamatory because there is no evidence that it is false. When Lukes made the statement, cily officials were moving to terminate Byrnes’s contract. On March 23, 2009, WBZTV quoted Lukes as stating that “(t)his kind of situation should not be tolerated.” (Joint Appendix Exh. 17.) This is Lukes’s opinion; it cannot be understood as a factual statement. It cannot be proven true or false, and it does not suggest any underlying facts that would potentially be defamatory. It merely expresses Lukes’s belief that the city should not allow people in Byrnes’s position to serve as teachers. Similarly, on March 24, 2009, John Monfredo was quoted as saying “(tjhis is indefensible, we certainly need to make sure that we get teachers, especially in special ed that are qualified.” (Joint Appendix Exh. 32.) This statement expresses Monfredo’s opinions on the situation, and also implies an assertion of fact: that Byrnes lacked certain qualifications to teach. However, once again, there is no evidence to suggest that this is false. Byrnes did not possess a teaching certificate and had no experience on the job. The majority of the statements in the record of this matter, express either true facts or the speaker’s opinion. They are not defamatory.
Byrnes alleges that certain statements made by the defendants are false. For example, on March 24,2009, WHDH quoted Lukes as stating that “(t]o pay someone who is not certified and does not have experience teaching — $75,000 as a special ed teacher can’t be justified.” (Joint Appendix Exh. 18.) Byrnes contends that her actual salary was only $60,059. However, “when a statement is substantially true, a minor inaccuracy will not support a defamation claim.” Reilly v. The Associated Press, 59 Mass.App.Ct. 764, 770 (2003); see also Murphy v. Boston Herald, Inc., 449 Mass. 42, 50 (2007). Lukes’s quote here simply expresses her belief that a person without a certification or teaching experience should not be employed as a special education teacher. The fact that she was mistaken as to Byrnes’s precise salary does not transform an otherwise non-defamatoiy statement into a defamatory one. Byrnes has not indicated any false statements of fact that rise above such “minor inaccuracies].” Reilly, 59 Mass.App.Ct. at 770.
III. The Defendants’ Conditional Privilege
Even if the defendants had made defamatory statements, they are shielded from liability as public officials in this case. Courts have held that statements made by public officials while performing their duties are conditionally privileged. Mulgrew v. Taunton, 410 Mass. 631, 635 (1991). A conditional privilege protects a defendant from liability unless the defendant acted with actual malice or a reckless disregard for the truth. Id. at 634. Public policy mandates that such “public officials (be allowed] to speak freely on matters of public importance during the exercise of their official duties.” Id. at 635.
Courts look to a number of factors in order to determine whether a government employee is a public official. These factors include whether the employee’s position is one in which the public has a particular interest beyond the general interest in the performance of government employees, whether the employee’s position invites public scrutiny, the employee’s ability to set guidelines of importance to public debate, the impact of the position on everyday life, the potential for social harm from abuse of the position, and the employee’s access to the press. Rotkiewicz v. Sandowsky, 431 Mass. 748, 752-53 (2000).
In the present case, the members of the School Committee are clearly public officials. Lane v. MPG Newspapers, 438 Mass. 476, 482-83 (2003) (“there is a consensus that all elected officials are public officials for the purpose of the application of defamation law”). In addition, Loughlin, as Superintendent of the Worcester Public School System, must also be considered a public official. See Rotkiewicz, 431 Mass. at 752-53.
The public certainly has a particular interest in Loughlin’s performance as the head of the city’s public school system. Furthermore, the media attention surrounding Byrnes’s hiring and firing indicates a high level of public interest and importance.
Thus, because the defendants are public officials, Byrnes could only maintain an action for defamation if she could demonstrate that they acted with actual malice or a reckless disregard for the truth.[5] To make such a showing, Byrnes would need to provide evidence “that the defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.” Stone v. Essex County Newspapers. Inc., 367 Mass. 849, 867 (1975). Byrnes has not indicated any evidence in the record which could support such an assertion. As stated above, most of the defendants’ statements expressed either an opinion or a true fact. There does not appear to be any evidence that the allegedly false statements of fact, such as Lukes’s remark that Byrnes made $75,000 instead of $60,059, were made with a knowledge of falsehood or a reckless disregard for the truth. As a result, conditional privilege would shield the defendants from liability even if they had made defamatory statements.
*160 C. Name-Clearing Hearing
Byrnes contends that she was deprived of a liberty interest in her employment with the Worcester Public School System without due process because of the defendants’ alleged defamation. Byrnes raised this claim in her initial complaint, and the defendants moved to dismiss it. In an order entered on November 3, 2009, the court allowed the defendants’ motion to dismiss this claim “unless Byrnes amends her complaint within ten (10) days to request a name-clearing hearing” [26 Mass. L. Rptr. 354]. Byrnes filed an amended complaint on November 9, 2009, but did not include a request for a name-clearing hearing. Byrnes did not request a hearing until she filed a second amended complaint on December 3, 2009. This was well after the court’s ten-day window had expired. Byrnes is not entitled to a name-clearing hearing.
D. Massachusetts Wage Act
Byrnes also alleges that she was not paid her outstanding wages on the day of her termination, and that she worked at least one day for which she has still not been paid. The Massachusetts Wage Act, G.L.c. 149, §148, states that “any employee discharged from such employment shall be paid in full on the day of his discharge.” The defendants contend that Byrnes cannot maintain a claim under the Wage Act because she has no reasonable expectation of proving damages. They assert that Byrnes received all wages owed to her within the normal pay cycle for a Worcester Public Schools teacher. However, under the Wage Act, Byrnes was entitled to her wages on the day of her termination. The defendants admit that Byrnes was not paid on that day. Even if a specific amount of damages remains subject to further evidence, the plaintiff has established a violation of the Wage Act. The defendants are thus not entitled to summary judgment on Count II of Byrnes’s complaint, and the plaintiff is (“summary judgment, where appropriate, may be rendered against the moving party,” Mass. Rules of Civil Procedure R. 56(c)).[6]
Order
For the foregoing reasons, it is hereby ORDERED that the defendants’ Motion For Summary Judgment is ALLOWED as to Counts I and III and DENIED as to Count II.
It is further ORDERED that judgment (as to liability only) shall enter in favor of the plaintiff as to Count II.

 This amended memorandum adds a quote attributed to defendant Lukes on page three that was mistakenly omitted in the original [docketed on June 28, 2012]. In all other respects the original decision and order is unchanged.

 This is not an exhaustive list of the “many comments" the plaintiff claims were made about her, but are illustrative of those that the plaintiff alleges to be defamatory and imposing liability as to all named defendants, (regardless of their individual author) by virtue of membership on the Worcester School Committee and their failure to retract any of the statements. (Statement of Facts, par. 15.)

 In this regard, the plaintiffs emphasis on her private status is misplaced where, as here, the defendants were conditionally privileged in their statements on important public issues.

 Damages may be sought by separate motion and hearing as to what the plaintiff was owed as of the day of her termination, if this can not be resolved.