Gordon, Robert B., J.
Presented for decision is the Defendants’ Motion to Dismiss Counts III, IV, VI and VII of the First Amended Complaint (the “Complaint”) against defendant Mullan, and Counts V, VI and VII against defendant Massachusetts Department of Transportation (“MassDOTj. For the reasons which follow, the Defendants’ Motion is ALLOWED IN PART and DENIED IN PART.
RELEVANT FACTS
The allegations set forth in the Complaint, construed in the light most favorable to the plaintiff, permit the following inferences of fact.
Thomas Welgoss (“Welgoss”) began working as Director of Risk Management at the Massachusetts Turnpike Authority (“MTA”) in December 2000. In or around November 2009, MTA’s operations were merged into MassDOT and the MTA was dissolved. Welgoss continued to serve as Director of Risk Management until his layoff from employment in February 2010. At all times relevant, defendant Mullan served as the Secretary of Transportation and CEO of Mass-DOT.
Welgoss possessed more than 30 years of risk management experience. Throughout his tenure with MTA and MassDOT, Welgoss exceeded all expectations of performance and received numerous pay raises and positive evaluations from his employer. At certain undefined points during his employment, including during his final year on the job, unnamed members of “senior management” agreed with Welgoss that Welgoss would remain in his position as Director of Risk Management “at least until the date that his pension would vest, i.e„ after 10 years of service for the Commonwealth, on or about December 18, 2010.” *339 Alternately, plaintiff alleges that unnamed members of MassDOTs “senior management” agreed that he would remain in his position as Director of Risk Management until he had completed his ongoing efforts in respect to the so-called CA/T [Central Artery/Tunnel] Project. Curiously, however, Welgoss nowhere alleges with clarity that defendant Mullan either made the subject agreement with him or even knew about this arrangement.[1]
The particularized allegations directed to defendant Mullan are very few in number.. They consist of the following:
(a) Welgoss was specifically requested by Secretary/CEO Mullan to continue serving as Director of Risk Management following the MTA/MassDOT merger in 2009.
(b) Welgoss proposed a comprehensive insurance program for the new MassDOT entity, to take effect in November 2009, which program was approved by Secretaiy/CEO Mullan. The program resulted in millions of dollars of cost savings to MassDOT, while achieving other financial priorities identified by the agency.
(c) Mullan appointed Welgoss to the Mass. Highway Risk Management Committee during his final year of employment, in which position Welgoss introduced the Committee to a risk matrix analysis for spotting risks and developing plans for mitigating them. Welgoss played a key role in the successful implementation of these risk control methods.
(d) Mullan personally expressed appreciation for the wide-ranging risk management/cost-saving initiatives Welgoss had proposed in response to a request from the MassDOT CEO.
Despite his exemplary performance on the job, and notwithstanding the assurances he had been given by senior management that he would remain in his position until at least his ten-year vesting dated on December 18, 2010, Welgoss was notified of his layoff from the agency on February 26, 2010. The layoff decision was approved by defendant Mullan, and MassDOT informed Welgoss (then age 67) that he was being let go due to “cost cutting.” In point of fact, however, Welgoss’s layoff produced no cost savings to Mass-DOT, and actually operated to deprive the agency of several million dollars in expense recovery as a result of it losing Welgoss’s unique knowledge and expertise in respect to these matters.
The Complaint alleges that MassDOT and Mullan retained and/or promoted less-qualified employees who were either female or younger than Welgoss. These employees included one Lidy Chan, who at some 25 years his junior replaced Welgoss and assumed his duties as Director of Risk Management. The Complaint further alleges that, following Welgoss’s layoff, Mass-DOT and Mullan acted deliberately to thwart Welgoss from securing replacement employment with the Commonwealth of Massachusetts. As they sought to assist other employees to locate lateral jobs within the government, the defendants provided no such assistance to Welgoss.
DISCRIMINATION CLAIMS AGAINST MULLAN
Count III of the Complaint asserts that, in approving the termination of Welgoss’s employment and in thereafter failing to afford him the opportunity to fill other positions in state government, in each case favoring younger and less-qualified persons, defendant Mullan discriminated against plaintiff on the basis of age. In Count IV of the Complaint, plaintiff asserts the nearly identical factual allegation, in this instance charging Mullan with discrimination on the basis of sex by terminating Welgoss’s employment and then favoring less qualified females in subsequent hiring. By these actions, Mullan is alleged to have aided and abetted MassDOTs discrimination against him, in violation of Mass. G.L.c. 151B, §§4(4A) and 4(5).
Mass. G.L.c. 15 IB’s general prohibition against age and sex discrimination (at §4(1)) applies to the actions of “employers,” and makes no provision for individual liability on the part managing agents or employees. See Ruffino v. State Street Bank & Trust Co., 908 F.Sup. 1019, 1048 (D.Mass. 1985). Individual liability can avail, however, under three different subsections of Chapter 15 IB, which apply to any “person” rather to any “employer.” These subsections prohibit retaliation (G.L.c. 151B, §4(4)), coercion, intimidation, threats or interference with another’s right to work free of unlawful discrimination and retaliation (G.L.c. 151B, §4(4A)), and aiding and abetting another in a violation of Chapter 151B or otherwise inciting, compelling or coercing unlawful acts (G.L.c. 151B, §4(5)). SeeBeauprev. Cliff Smith & Assoc’s., 50 Mass.App.Ct. 480, 494-95 (2000), rev. denied, 433 Mass. 1101 (2001). In the case at bar, while the Complaint contains isolated references to “retaliation,” none of these references are connected to any allegations directed to Mullan; and, in all events, no actual claim for retaliation is asserted against Mullan under any count of the Complaint. Likewise, the Complaint contains no evidence of coercion, intimidation, threats or interference with plaintiffs right to work free of unlawful discrimination, and plaintiffs counsel conceded during oral argument that such theories formed no part of Welgoss’s claims in Counts III and IV.[2] Accordingly, plaintiffs claims of individual discrimination liability against Mullan rest entirely on the theoiy that, in approving the discriminatory decisions of MassDOT to terminate Welgoss’s employment and then bar him from other positions ■within state government, Mullan “aided and abetted” MassDOTs age and sex discrimination.
To prevail on an “aiding and abetting” claim, however, a Chapter 15 IB plaintiff must allege facts sufficient to demonstrate that the individual “committed a *340 wholly individual and distinct wrong which is separate from the [discrimination] claim in the main.” Johnson v. Verizon New England, 23 Mass. L. Rptr. 40, 2007 WL 2705850, at *10 (Mass.Super. Aug. 22, 2007) (citing decisions of MCAD). Accord Butta v. Wellington Mgt. Co., 79 Mass.App.Ct. 1126, 2011 WL 2463446, at 8 (June 22, 2011) (unpublished opinion under Appeals Court Rule 1:28) (affirming summary judgment on aiding and abetting claims asserted against employees who “made several decisions affecting her work” and ultimately “made the decision to terminate”: court held that individual employees had not “acted in any manner distinct and separate from the duties and responsibilities of their positions as Wellington officers”). These authorities make clear that plaintiffs Complaint states no viable aiding and abetting claims against defendant Mullan.
As set forth ante, the only allegations of discrimination that are made against Mullan in this case are that he approved the decision to lay off Welgoss, and that he thereafter failed to make replacement job opportunities available to Welgoss that were instead extended to less qualified younger and female employees. These allegations, however, represent the very gravamen of the discrimination claims asserted against MassDOT. Mullan’s purportedly discriminatory behaviors are not “distinct and separate” from either the discrimination ascribed to MassDOT or his duties as that entity’s CEO. Indeed, and contraiy to the argument plaintiff has urged in his Opposition, Mullan could not possibly have approved the decision to lay off Welgoss, or failed to facilitate his hiring into other positions of employment within the Commonwealth, other than in his capacity as Secretary of Transportation and CEO of MassDOT.
Accordingly, the Complaint states no viable claims for age or sex discrimination against defendant Mullan individually. Counts III and IV of the Complaint will, therefore, be dismissed.
BREACH OF CONTRACT/GOOD FAITH AND FAIR DEALING/PROMISSORY ESTOPPEL (AGAINST BOTH DEFENDANTS)
In Count v. of the Complaint, plaintiff asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing against defendant Mass-DOT. And in Count VI of the Complaint, plaintiff asserts claims of breach of contract and promissory estoppel against both defendant MassDOT and defendant Mul-lan. The Court struggles to differentiate the claims plaintiff advances in Countv. from those pressed in Count VI, and would suggest that these claims be repleaded in a Second Amended Complaint in accordance with the rulings of law set forth herein. That said, the Court will endeavor to construe this pleading as drafted in the light most generous to plaintiffs claims.
The defendants first seek dismissal of Counts v. and VI on the ground that these contract and tort claims represent a mere recasting of the plaintiffs claims of discriminatory discharge under Mass. G.L.c. 151B. The Court agrees that, as and to the extent Count v. premises its claim for breach of contract/breach of the covenant of good faith and fair dealing on MassDOFs purported failure to adhere to a progressive discipline policy applied to other (younger and female) employees, or on its articulation of false and pretextual reasons for Welgoss’s layoff, the claim is preempted by the exclusive remedies which avail under Chapter 151B. See, e.g., Gasior v. Mass. General Hospital, 446 Mass. 645, 651 n.8 (2006); Robinson v. City of Boston, 71 Mass.App.Ct. 765, 767-68 (2008); Dziambav. Warner & Stackpole LLP, 56 Mass.App.Ct. 397, 409 (2002), rev. denied, 438 Mass. 1106 (2003). Countv’s other claims for violation of the implied covenant of good faith and fair dealing are likewise defective, failing to assert any theory of common law liability under this doctrine applicable to the facts plaintiff has pleaded.[3] Accordingly, Count v. will be dismissed without prejudice to the plaintiffs right to replead the claim in accordance with the clarifying limitations of this opinion.
Count VI of the Complaint’s claims for breach of contract and promissory estoppel stand on a different footing. These claims rest on the allegation that Welgoss was repeatedly assured that he would remain in his position as Director of Risk Management through at least December 18, 2010 or his completion of the CA/T Project. As a threshold matter, such claims are not preempted by Mass. G.L.c. 15 IB. Even if MassDOT’s motivation for not honoring this claimed promise and instead terminating Welgoss’s employment in February of 2010 were age and/or gender bias, that fact would plainly not render the cause of action duplicative of plaintiffs claims of discrimination. This is because the contractual cause of action in Count VI rests upon an essential element—an enforceable promise not fulfilled— that forms no part of a discrimination claim. Welgoss’s claims for discriminatory discharge naturally require proof that his employment at MassDOT was terminated for reasons of bias. But they do not require proof that MassDOTs discharge decision additionally violated an enforceable promise that Welgoss would remain employed through December 2010. By the same token, plaintiffs breach of contract claim in this case turns on the allegation that Welgoss was involuntarily discharged prior to the date through which MassDOT had promised him his employment would continue; but the additional motivation (age and/or gender bias) required for Chapter 151B liability is entirely superfluous to this cause of action. In other words, the two claims are complementary rather than duplicative, and the partially overlapping evidence being put forward by Welgoss in support of such claims furnishes no basis for dismissal on Chapter 151B preemption grounds.
The defendants next argue that plaintiffs breach of contract claim in Count VI fails, because Welgoss was indisputably an at-will employee of MassDOT. The Court does not agree. The essence of at-will employment is a mutual understanding between employer and employee *341 that the relationship is of indefinite duration, and that either party may terminate it at any time without notice, cause or financial consequence. See Wright v. Shriners Hospital, 412 Mass. 469, 472 (1992). The presumption of at-will employment that arises when an employment arrangement is durationally undefined, however, may be modified by the parties’ express agreement, either written or oral. See 45 Massachusetts Practice, Employment Law, at §23 (“The at-will presumption may be overcome by the adoption of an express employment agreement granting the employee greater job securfiy. Express employment contracts' arise by words—either written or spoken, of agreement. . . Express agreements may displace the at-will presumption directly, as when they contain an express assurance of job security, or indirectly, by providing for employment for a specific period of time” (citations omitted)).
This is precisely what the Complaint alleges to have occurred in the present case. Plaintiff claims that he was on multiple occasions assured (and Welgoss agreed) that he would be permitted to remain as MassDOT’s Director of Risk Management through either or both of his ten-year vesting date (December 18, 2010) or the completion of his work on the CA/T Project. This is the definition of a term contract. Crediting such allegation as the Court must at the Rule 12 stage, Welgoss’s employment at MassDOT cannot be considered at-will in nature.[4]
To support its contention that MassDOT’s purported promise did not alter Welgoss’s status as an at-will employee, the defendants advance two principal arguments. First, they contend that no one at MassDOT other than Mullan possessed the statutory authority to bind the agency to a term employment contract. The difficulty with this argument is that the Complaint serially alleges that the agreement was entered into between Welgoss and members of “senior management” at MassDOT. It is unclear from the pleading whether or not “senior management” is intended to include Mullan. Construing the pleading generously as Rule 12(b)(6) requires, and leaving to another day the issue (not briefed by either party) of whether or not Mullan was in fact the only person who could bind MassDOT to a modification of Welgoss’s employment agreement, the Court finds the Complaint’s allegations of contract breach recited under Count VI sufficient to withstand challenge at the pleading stage.[5]
MassDOT alternately argues that the term contract claimed by Welgoss is unenforceable under the Massachusetts Statute of Frauds. The Court does not agree. The Statute of Frauds, G.L.c. 259, §1, provides in relevant part that “(n]o action shall be brought upon an agreement that is not to be performed within one year from the making thereof... [u]nless the... agreement ... is in writing and signed by the party to be charged ...” In the present case, plaintiffs claimed agreement with MassDOT is concededly not in writing; but the contract as alleged is not necessarily one incapable of performance within a year of its making. To the contrary, Welgoss claims that on multiple occasions during his final year of employment (that is, February 2009-Februaxy 2010), the senior management of Mass-DOT assured him that he would remain as Director of Risk Management through at least December 18, 2010. This was, by its plain terms, a promise capable of full performance within ayear of its making.[6]The additional promise Welgoss alleges—viz., that he was assured he would remain as Director of Risk Management through the completion of his work on the CA/T Project—likewise satisfies the requirements of the Statute of Frauds. Welgoss could theoretically have concluded his work on the Central Artery Tunnel Project at any time; because, as residents of the Commonwealth know all too well, that project had no fixed deadline for completion. Accordingly, because the contract alleged by the plaintiff in this case was fully capable of complete performance within a year, it is enforceable notwithstanding the fact that it is not evidenced by a writing. See Boothby v. Texon, 414 Mass. 468, 478 (1993).
Finally, even if plaintiffs contract claims were in some manner defective on any of the grounds the defendants have put forward, the Court observes that Count VI is pleaded in the alternative as a claim for promissory estoppel. Promissory estoppel is a common source of equitable remedy in the employment context where employees allege that they reasonably relied upon promises that for one reason or another lack the requisite consideration or writing to be enforced as contracts. See Rhode IslandHospitalTrustNat’lBankv. Varadian, 419 Mass. 841, 849-50 (1995). This Court is aware of no binding authority in the Commonwealth that precludes the application of promissory estoppel against the state and its agencies. To the contrary, numerous cases have approved such claims in the employment setting. See, e.g., Saxonis v. City of Lynn, 62 Mass.App.Ct. 916, 917 (2004); McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356, 362-63 (1985). Accordingly, the Court will deny the defendants’ Motion to Dismiss as to Count VI of the Complaint.
FRAUD AND MISREPRESENTATION AGAINST MULLAN
In Count VII of the Complaint, plaintiff charges defendant Mullan with common-law fraud and misrepresentation. Welgoss rests this claim upon the allegations that (1) he had been assured that he would be retained as Director of Risk Management until his pension vested in December 2010 and/or until he completed his work on the CA/T Project, and (2) he was promised that his employment would be evaluated on a good faith basis and reviewed from time to time. Defendant Mullan seeks dismissal of this Count due to insufficiency of pleading. The Court agrees.
To make out a viable claim for fraudulent misrepresentation, Welgoss must plead facts sufficient to sustain the following contentions: (a) that Mullan made a misrepresentation of fact; (b) it was made with the intention of inducing Welgoss to rely upon it; (c) it was made with *342 knowledge of its falsily (or, in the case of a promise as to actions to be taken in the future, with a then-present intent not to perform them); (d) it was intended to be acted upon; and (e) Welgoss suffered damage as a result of his reliance on the representation. See generally Equipment & Sys. for Industry v. Northmeadows Constr. Co., 59 Mass.App.Ct. 931 (2003); Zimmerman v. Kent, 31 Mass.App.Ct. 72 (1991). Mass.R.Civ.P. 9(b) additionally requires that any claim for fraud and deceit be pleaded with particularity. Tins heightened pleading requirement dictates that a plaintiff claiming fraud specify the speaker, time, place and substance of the alleged misrepresentation, as well as the particulars of the plaintiffs detrimental reliance on same. See, e.g., Guo v. Datavantage Corp., 2008 WL 660338, at *5 (D.Mass. 2008).
In the present case, the fraud set forth in Count VII of the Complaint fails to make out a viable claim against Mullan on any standard of review. For one, the Complaint contains not a single allegation to the effect that Mullan ever personally made any promises or statements at all that induced Welgoss’s reliance. The central promise at the heart of plaintiffs claim of fraud—that Welgoss was assured he would remain at MassDOT through at least December 18, 2010—is one the Complaint repeatedly attributes to unnamed “senior management.” Indeed, the Complaint does not even allege that Mullan knew about this promise at all, even as it identifies 13 other members of MassDOT management who did. Likewise, no speaker of the promise that Welgoss would be “evaluated in good faith” is named anywhere in the Complaint; and, once again, no connection to Mullan himself is remotely suggested. These deficiencies in the pleading would, without more, fully warrant dismissal under Rule 12(b)(6).
Aside from the fact that nothing in the Complaint ties defendant Mullan to either of the promises upon which Welgoss claims to have relied, the alleged fraudulence of these promises is not pleaded with any of the particularity required by Rule 9(b). Thus, in addition to not identifying the speaker of these purportedly false promises, the Complaint puts forward no facts regarding the time, place or specific substance of the promises. Nor does the Complaint recite any basis for finding the subject promises to have been fraudulent when made (as opposed to merely false in hindsight), or allege exactly how Welgoss relied to his detriment on these unfulfilled promises. These represent independently fatal defects in the claim’s current pleading.
Accordingly, Count VII of the Complaint is hereby dismissed both for failure to state a claim and failure to plead fraud with sufficient particularity. The dismissal, however, will be without prejudice to plaintiffs right to replead the claim in a manner that satisfies the Rules of Civil Procedure. See Datavantage, supra
CONCLUSION AND ORDER
For the reasons set forth above, the defendants’ Motion to Dismiss is ALLOWED IN PART and DENIED IN PART. Specifically:
(1) Counts III and IV against defendant Mullan are dismissed with prejudice.
(2) Count v. against defendant MassDOT is dismissed without prejudice to the plaintiffs right to replead the claim in accordance with the terms and limitations hereof.
(3) Count VI is dismissed with prejudice as to defendant Mullan only.
(4) Count VII against defendant Mullan is dismissed without prejudice to the plaintiffs right to replead the claim in accordance with the terms and limitations hereof.
(5) As to all other claims to which the defendants’ Motion to Dismiss is directed, the motion is denied in accordance with the foregoing discussion.

paragraph 11 of the Complaint, plaintiff identifies by name 13 separate members of senior management at Mass-DOT whom Welgoss alleges were aware he had been promised that he would remain in his position as Director of Risk Management through at least December 18, 2010. Defendant Mullan is not included in this list.

Plaintiffs Opposition to Defendant’s Motion to Dismiss similarly confirms that “aiding and abetting” represents the lone liability theory under Chapter 151B that Welgoss seeks to press against Mullan.

Plaintiffs repeated citations to Fortune v. Nat’l Cash Register Co., 373 Mass. 96 (1977), Gramv. Liberty Mutual Ins. Co., 384 Mass. 659 (1981), and their progeny (see Plaintiffs Opposition, at pp. 6-11), are misplaced. These cases do not stand for the proposition that any species of “bad faith” practiced by employers against employees will (without more) give rise to a cause of action. Plaintiffs asserted criticisms of MassDOT’s discharge decision, including the charge that this decision rested on a false premise (cost-cutting) and defeated Welgoss’s expectation that he would have continuing employment at the agency, do not implicate the covenant of good faith and fair dealing as that doctrine has been expounded by Massachusetts courts.

The Court additionally notes that defendant Mullan is not a proper party to a breach of contract or promissory estoppel claim arising in the context of Welgoss’s employment. Although chief executives of employers may be personally liable for the non-payment of wages under the Massachusetts Payment of Wages Act, see Mass G.L.c. 148, §149, no such principle applies to hold individuals liable for the contracts they enter into on behalf of known employers. In this case, Mullan was at all times acting on behalf of a disclosed principal (MassDOT and, before it, the MTA). He thus cannot be held personally liable for agreements Welgoss understood were being made on behalf of this employer. See Porshin v. Snyder, 349 Mass. 653, 655 (1965) (“Unless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract” (quoting Restatement 2d Agency, §320 and comment a)).

MassDOT will have ample opportunity to explore who made what promise to Welgoss, and on what authority, during discovery, and to address the legal viability of plaintiffs contract claim in a motion for summary judgment.

If the promise had been made at any time between December 18, 2009 and Welgoss’s layoff in February of 2010, it would have been capable of full performance (ie., MassDOT allowing Welgoss to remain as Director of Risk Management through December 18, 2010) in less than one year.